## JOHN H. HAVLIN v. CONTINENTAL NATIONAL BANK OF ST. LOUIS, Appellant.

**Division Two, December 9, 1913.**

1. **PROMISSORY NOTE: Accommodation Indorser: Voluntary Payment.** An accommodation indorser for the maker of a promissory note is, in contemplation of law, a surety. As such he is equally bound with the maker to pay the note when it becomes due, and his payment in no sense is voluntary.

2. ————: ————: ————: **Legal Coercion.** Where certain certificates of stock were deposited as collateral security, with the payee of notes, some of which were signed by plaintiff as accommodation indorser, under a contract by which the payee was given power to sell the stock at public or private sale in default of the payment of the debt, and after the stock was sold and bought in by the payee and resold to an innocent party, the payee called upon the accommodation indorser for the payment of the notes indorsed by him, and the indorser protested that he ought not to pay them, that the sale of the collateral was invalid, and that the payee should apply the proceeds of the sale to the payment of the notes signed by him, and the payee insisted the sale was valid and that he had applied the proceeds to the payment of the note upon which he was not indorser, and the indorser there-

Havlin v. Continental Nat. Bank.

upon paid the notes indorsed by him, the payment was not voluntary, but was made in pursuance to what may not inaptly be termed legal coercion. The payment cannot be said to have been made under a mistake of law, nor was it voluntary. In such case it became the indorser's legal duty to pay the notes, and thereby avoid the annoyance and expense of litigation.

3. ——: ——: **Presentment and Demand.** Presentment and demand are not necessary where notes at their maturity are owned by a bank at which by their terms they were made payable.

4. ——: ——: **Payment Twice: Subrogation.** An accommodation indorser of a note who is compelled to pay the debt of his principal is subrogated to the latter's rights. So that, where certain certificates of stock were deposited as collateral security with the payee of notes, some of which were signed by the plaintiff as accommodation indorser, and the payee afterwards sold the certificates to an innocent purchaser, and credited the amount of the sale upon the notes not indorsed by plaintiff, and thereafter required plaintiff to pay the notes indorsed by him, and the maker sued the payee for an accounting, alleging the sale of the stock was illegal, and recovered in that suit, and the amount of all the notes was credited to the payee, and a surplus was adjudged to belong to the maker, the accommodation indorser can recover from the payee the amount of money paid by him, for under the circumstances the debt was twice paid.

5. **SALE OF COLLATERAL: No Payment or Manual Possession.** If the sale of the stock deposited with the payee of a note as collateral security was actually made by the pledgee, the sale was not changed or altered by the fact that the purchaser did not pay for the stock in actual cash or did not come into manual possession of it.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*George L. Edwards* and *Edward D'Arcy* for appellant.

(1) Havlin's payment to the bank, if made under mistake at all, was made under mistake of law, and, therefore, cannot be recovered. Hethcock v. County,

200 Mo. 170; Brewing Co. v. St. Louis, 187 Mo. 367; Niedermeyer v. Curators, 61 Mo. App. 654; State ex rel. v. Stonestreet, 92 Mo. App. 220; Teasdale v. Stoller, 133 Mo. 651; Douglas v. Kansas City, 147 Mo. 428; Scott v. Ford, 68 L. R. A. 469. (2) But if Havlin's mistake can be regarded as a mistake of fact, still he cannot recover the money, because the mistake did not induce him bona fide to believe that the money was due when he paid it. Brewing Co. v. St. Louis, 187 Mo. 376; 15 Am. & Eng. Ency. Law (2 Ed.), 1105. (3) The record in the Hagan case, to which Havlin was not a party, is not admissible in this case against the appellant bank, as proof of plaintiff's cause of action. 1 Greenleaf on Ev., secs. 522, 524, 538, 539; Story Eq. Pl., sec. 791; 4 Hughes Gr. & Rud., 979, rule 8. (4) The contract of suretyship does not impose upon the surety an obligation to be bound by judgments rendered against the principal, unless the obligation expressly assumes such an undertaking. State v. Holt, 27 Mo. 343. (5) There is no such privity between the maker and the indorser of a note that a judgment against or in favor of one will be binding upon, or available to, the other. 23 Cyc. 1266, n. 30; Barker v. Cassidy, 16 Barb. 177; Fenn v. Dugdale, 31 Mo. 580; Cobb v. Little, 2 Me. 261, 11 Am. Dec. 72; Chrisman v. Hannan, 29 Gratt. (Va.) 494, 26 Am. Rep. 387; Brooklyn v. Bank, 102 U. S. 14; 2 Smith's Lead. Cases (8 Ed.), p. 955, note to Kingston case. (6) A judgment against the principal is of no effect as against the surety. *A fortiori* a judgment against or in favor of Havlin, the principal, is of no effect against Hagan, regarded as surety. Rodini v. Lytle, 17 Mont. 448, 52 L. R. A. 165; Note to Kingston case, 2 Smith's Lead. Cases (8 Ed.), pp. 954, 956. (7) It is only where, as between principal and surety, notice of the action is given, that the other party is bound by the result. 1 Greenleaf Ev. (14 Ed.), sec. 188; Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129; St. Joseph v. Railroad, 116 Mo.

636; Beef Co. v. Consolidated Co., 171 Mass. 127; Ryerson v. Chapman, 66 Me. 557, 2 Black Judg., 567-573, 2 Van Fleet For. Adj., 576-579.

*Robert L. McLaran* and *L. A. Steber* for respondent.

(1) A surety paying the debt of his principal is entitled to be subrogated in equity to the securities pledged with the creditor by the principal debtor to secure the payment of the debt. Cowgill v. Linville, 20 Mo. App. 147; Canthorn v. Berry, 69 Mo. App. 404; Brewing Co. v. Jordan, 110 Mo. App. 286; Benne v. Schnecko, 100 Mo. 227. (2) The fact that the surety pays by giving his individual note is immaterial. 27 Am. & Eng. Ency. Law (2 Ed.), p. 212; Brandt on Suretyship, sec. 249. (3) The claim of $30,000 for the conversion of the pledged stock stood in the place and stead of the said stock. Hagan v. Bank, 182 Mo. 319. (4) A pledgee has no right to sell on credit at all, unless the power of sale authorizes it. 2 Perry on Trusts, sec. 768a; Ives v. Davenport, 3 Hill, 373. (5) A trustee selling on credit, in excess of his power, is personally responsible for the purchase price. Davis Appeal, 14 Pa. St. 372. (6) A creditor after receiving payment from the surety has no right to cancel or compromise any security without the surety's consent. 27 Am. & Eng. Ency. Law (2 Ed.), p. 210. (7) The equitable doctrine of constructive trusts is of flexible character and covers all cases where the defendant has received or obtained possession of any money or property which in equity and good conscience he ought to pay over to the plaintiff. Banking Co. v. Com. Co., 195 Mo. 288; Harrison v. Murphy, 106 Mo. App. 473. (8) Where a surety pays the debt of his principal and the creditor thereafter collects the same debt from the principal, without disclosing the fact that he has been paid by the surety, the creditor thereupon holds the money received from the principal debtor to the use of the

surety. 1 Perry on Trusts, p. 369, sec. 247a. (9)
When the holder of a note assigns the note for full
value and thereafter collects the full amount from the
maker, without disclosing the fact that he has assigned
the note, he thereupon holds the proceeds received
from the maker to the use of the assignee. 1 Perry on
Trusts, p. 369, sec. 247a; Ellis v. Amason, 2 Dev. Eq.
273; Fortesque v. Barnett, 3 Myl. & K. 36. (10) The
record of a judgment is not only competent but it is
conclusive evidence against all persons to prove that
the proceedings therein recorded actually took place
as therein recited, and that judgment was actually ren-
dered as therein set forth. Steven's Digest, art. 40;
1 Greenleaf on Ev., sec. 538; Taylor on Ev., sec. 1480.

WALKER, J.—John H. Havlin, the respondent,
brought suit in equity against the Continental National
Bank, hereinafter designated as "the bank," appellant,
in the circuit court of the city of St. Louis, to recover
seven thousand two hundred dollars paid by him to the
bank as an endorser on two notes of one O. L. Hagan,
which subsequent to Havlin's payment were again paid
in full by Hagan in a settlement with the bank, which
thereafter refused to repay Havlin. Upon a trial a
judgment was rendered in favor of Havlin, from which
the bank appeals.

The material facts are as follows:

O. L. Hagan was indebted to the bank in the sum
of $23,203.15. This debt was represented by three
promissory notes executed by Hagan to the bank, one
for $5000, another for $1500, and the balance by a third
note. The respondent Havlin, who then resided and
now resides in Cincinnati, Ohio, indorsed the first two
notes for the accommodation of Hagan, the bank hav-
ing knowledge of the character of the indorsement. As
further security for the payment of said debt, Hagan
had deposited with the bank as collateral 770 shares of
the capital stock of the Hagan Opera House Company.

under a contract in which said stock was valued at $89,-
000, and the bank was given power to sell same at pub-
lic or private sale in default of the payment of the in-
debtedness.

On the 22nd day of June, 1897, all of said debt was
past due and unpaid and the bank, claiming to act un-
der the power of sale conferred by the contract, sold
said stock at a so-called public sale on the floor of the
Merchants Exchange during a session of said body, in
the city of St. Louis, when it was bought by one Finis
E. Marshall, cashier of the bank, for $5000, he being
the only bidder. About a week after the sale the bank,
claiming to be the absolute owner of the stock, sold it at
private sale to J. C. Jannopoulo for $30,000, receiving
a part of the purchase price in cash and taking Jannop-
oulo's notes for the balance. On the same day, or the
day after the sale to Jannopoulo, said Marshall, rep-
resenting the bank, called upon Havlin, who happened
to be in St. Louis, for the payment of the two notes of
$5000 and $1500 respectively. Havlin protested that
he ought not to pay them, that the so-called public sale
of the collateral made by the bank on the floor of the
Merchants Exchange was invalid, and that the bank
should apply the proceeds of the sale of the stock to
Jannopoulo to the payment of the notes. The bank
through Marshall insisted that the sale on the Mer-
chants Exhange floor for $5000 was valid; that it had
applied this sum to the payment of the third note upon
which Havlin was not an indorser; that upon the pur-
chase of the stock by Marshall it became the property
of the bank, and that the proceeds of the sale of the
stock to Jannopoulo were the bank's individual prop-
erty, and that the notes indorsed by Havlin were still
wholly unpaid. After much discussion, Havlin, upon
the repeated declarations made by Marshall, that the
bank would look to him (Havlin) for payment, finally
took up the two notes upon which he was indorser, and
gave his individual notes for their full amount. The

original notes were then indorsed over to him, without recourse, and the individual notes he subsequently paid in full to the bank.

A few weeks after the payment of the notes to the bank by Havlin, who thereupon returned to Cincinnati, to-wit, on August 9, 1897, Hagan brought suit against the bank to redeem the 770 shares of the Hagan Opera House Company stock, pledged by him to the bank as aforesaid, or for an accounting as to its value. In this suit Hagan contended that the bank had improperly exercised its power to sell the stock at public sale under the pledge made by him to it; that the so-called public sale was invalid, and that he was, therefore, entitled to redeem the stock, or if it had been sold, to have an accounting for its value.

The trial court sustained this view, rendered a decree setting aside the sale made on the floor of the Merchants Exchange as unfair and found that the bank had subsequently "effectually sold at private sale to J. C. Jannopoulo, for the sum of $30,000, the 770 shares of the capital stock of the Hagan Opera House Company, but that said Jannopoulo was an innocent purchaser for value and without notice, and that the bank must account to plaintiff for that amount of money." This judgment was, upon appeal, affirmed by this court in Hagan v. Continental National Bank, 182 Mo. 319. In this suit Hagan alleged that he was indebted to the bank in the sum of $23,340, that being the full amount of his indebtedness, inclusive of the two notes for $6500 indorsed by Havlin as aforesaid, and which had been paid by the latter. There is no evidence that Hagan knew that Havlin, his indorser, had previously paid the two notes to the bank. At the time of the trial Hagan was dead.

The bank in its answer admitted that Hagan's indebtedness was $23,340, together with interest thereon, which necessarily included the two notes indorsed and which had been paid by Havlin, there being no other

indebtedness of Hagan to the bank. The answer did not mention the fact that Havlin had paid the notes indorsed by him, and that said notes upon being paid had been assigned to him. The decree rendered in favor of Hagan in that suit was upon the theory that he was still indebted to the bank in the full amount of all notes held by it against him on June 22, 1897, or prior to Havlin's payment. The court, therefore, gave the bank credit for the full amount of these notes and rendered judgment over in Hagan's favor for the sum of $6796.85, being the difference between the sum of $30,000, for which the court decreed that the bank was accountable, and the amount of all of the notes Hagan had given the bank. In this decree, therefore, the bank received and accepted credit for the amount of the notes which had been previously paid by Havlin and as a consequence was twice paid the notes of Hagan on which Havlin was indorser.

Upon the presentation of the foregoing facts and submission of the cause, the St. Louis Circuit Court at the June term, 1909, rendered the following judgment in the case at bar:

"Now at this day the court being fully advised of and concerning this cause heretofore submitted, doth find that the defendant [the bank] is indebted to the plaintiff [Havlin] in the sum of $7200, with interest at the rate of six per cent per annum from October 2, 1906, to date. It is, therefore, considered and adjudged by the court that the plaintiff recover of the defendant the sum aforesaid as found, together with interest thereon, and also his costs and charges herein expended and that execution issue therefor."

It is from this judgment that the bank appeals.

Appellant's contentions are:

First. That the money paid by respondent to the bank was paid by him with knowledge of all the facts and in settlement of a dispute as to his liability to the bank; and that his mistake, if there was a mistake, in

paying money to the bank, was a mistake of law which will prevent his recovery in this case.

Second. Even if respondent's mistake in paying the money can be regarded as a mistake of fact in that he was ignorant of the manner in which the sale of the stock had been conducted on the floor of the Merchants Exchange, he nevertheless cannot recover because he was not induced to pay the money because of such alleged mistake of fact, but to avoid annoyance and expense of litigation with the bank.

Third. That there never was a sale to Jannopoulo of the Hagan Opera House stock bought in by Marshall at the Merchants Exchange sale; that Jannopoulo was to pay for the stock out of the profits earned in conducting a theatre in the Hagan Opera House, which profits never materialized and he never paid but $12,-500 of the $30,000 contracted to be paid.

I. Respondent, an accommodation indorser for Hagan, the maker, on the notes to the bank, was, in contemplation of law, a surety. [Weimer v. Shelton, 7 Mo. 237; Osborne v. Fridrich, 134 Mo. App. 449.] As such, he was equally bound with the maker to pay the notes when they became due. In so doing he simply met the obligation he made when he became surety, and the payment can in no sense be said to have been voluntary; in fact, it has been expressly decided in another jurisdiction that a payment made by an accommodation indorser under a state of facts similar to those in the concrete case, was not voluntary (Smith v. Folsom, 80 Ohio St. 218) but was made under what may not inaptly be termed legal coercion. An indorser of a negotiable instrument warrants inter alia that if the instrument is dishonored he will, upon notice thereof, duly given to him, pay the same, with interest, [Kinsel v. Ballou, 151 Cal. 754; Mer. Natl. Bk. v. Bentel. 15 Cal. App. 170.] No question as to dishonor arose in the case at bar, but it may be said in passing, if it had,

presentment and demand are not necessary where notes, as in this case, were at maturity owned by the bank and by their terms were made payable there. [Bank U. S. v. Smith, 11 Wheat. 171, 6 Law Ed. 443; Cent. Natl. Bank v. Stoddard, 83 Conn. 332.]

Respondent's interest as well as his legal duty, therefore, when the notes became due and remained unpaid, was to pay them and thereby avoid the annoyance and expense of litigation. [Wilson v. Kieffer, 141 Mo. App. 137.] A payment made under such circumstances does not involve the question of a mistake of law as contended by appellant, but on account of the legal relation of the respondent to the obligation as a surety, the payment may properly be held to have been made under duress, thus rendering the contention groundless. This disposal of appellant's first contention eliminates the second from consideration.

As to the third contention that there was no sale of the Hagan Opera House stock to Jannopoulo, it would be sufficient to say, if this fact were vital to the determination of the matter here at issue, that it was fully adjudicated and the sale declared to have been made in Hagan v. Continental Bank, 182 Mo. 319. However, leaving out of consideration the ruling of this court in the Hagan case, the record here is ample to sustain the conclusion that the sale was made; it is admitted both by direct averment and by implication in appellant's answer; it is testified to by Jannopoulo himself and by Lewis, formerly cashier of the appellant bank, and now cashier of the Bank of Commerce, which subsequently absorbed the appellant bank. Other evidence direct and circumstantial points to proof of a sale. If the transaction constituted a sale, and we hold that it did, then it was none the less so when respondent brought this action, and contentions to the contrary based on the ground that Jannopoulo did not pay for the stock or that he did not have manual posses-

sion of it, cannot change it.   The matter, therefore, in our opinion, is no longer open to argument.

II.   Respondent's payment not having been voluntary but in discharge of his obligation as a surety, and the bank having twice been paid the notes, the second time by the maker, Hagan, in his settlement with the bank after the judgment against it in his favor (Hagan v. Bank, supra), the respondent is entitled to recover from appellant the amount paid by him with interest, under the rule that one compelled to pay the debt of a principal is subrogated to the latter's rights.   If the principal had himself twice paid the notes, he would unquestionably be entitled to recover of the bank any sum paid in excess of the amount of the debt and interest actually due.   A surety is in no worse position and is entitled to a like right of action.   This conclusion is too elemental to require the citation of authorities to sustain it and is clearly consonant with equity and good conscience.

The judgment of the circuit court should, therefore, be affirmed, and it is so ordered.   *Brown, P. J.,* and *Faris, J.,* concur.