(No. 1699, December 2, 1914.)

J. H. SANDELL, Appellee, vs. JAMES W. NORMENT, Appellant.

### SYLLABUS BY THE COURT.

1. The court will not pass upon the effect of a motion by both parties for an instructed verdict, where there is no evidence in the record, which would have warranted a verdict for appellant, if the cause had been submitted to the jury. Evidence reviewed: Held, that the court properly directed a verdict for appellee.

P. 558

2. No representations, true or false, made by one maker of a note to another, no secret understanding between such makers, no inducements offered by one to the other, affect the validity of the instrument in the hands of the payee unless he knew or was chargeable with notice of such facts.

P. 558

3. The mere passiveness of the creditor in the collection of his debt, either of the principal debtor, or from collateral securities held by him is not sufficient grounds for discharging the surety.

P. 559

4. Where a party, taking the deposition of a witness, seeks to impeach such witness by showing that he has made a contrary statement, at another time and place, as to the facts about which he testifies, it is incumbent upon such party to have the statement, so submitted to the witness, incorporated into the deposition, in order to lay the proper foundation for its introduction.

P. 561

5. Where the question as to the amount of the money judgment which plaintiff is entitled to recover, if a recovery is to be had, is not disputed, and can be ascertained from the pleadings, and is simply a matter of calculation, a verdict returned by the jury, finding the issues in the case for the plaintiff, without stating the amount of the recovery, is sufficient to support a judgment.

P. 562

6. Where a party to a suit is cognizant of the fact that a witness residing beyond the jurisdiction of the court, can testify as to certain facts, material to the issues in the case, it is his duty to take the deposition of the absent witness, and, where he does not do so, or attempt to do so in good faith, he cannot procure a new trial on the ground of newly discovered evidence, based on facts as to which such witness will testify.

P. 564

7. Where a party seeks to justify a failure to take the deposition of a witness, residing within another state, it is incumbent upon him to establish the fact that under the statutes of the state where the witness resides, no power exists in the courts of that state to compel the attendance and testimony of the witness.     P. 564

Sandell v. Norment, 19 N. M. 549

8. Sub-section 136, Section 2685, C. L., 1897, refers only to the rendition of the judgment, and not to the entry thereof.
P. 565

Appeal from District Court, Santa Fe County; Merritt C. Mechem, Presiding Judge. Affirmed.

RENEHAN & WRIGHT, Attorneys for Appellant.

Effect of request for both parties for direction of verdict. 157 U. S. 154; 142 Fed. 132; A. & E. Ann. Cases, 545; 25 Okla. 600; 30 Okla. 6; 68 N. C. 509; 233 Ill. 501; 13 A. & E. Ann. Cases 369; 28 A. & E. Ann Cases 1346; 210 U. S. 1; 149 S. W. 1056.

Effect of appellee's motion for a directed verdict. 38 Cyc. 1543; 100 Ind. 127; 50 Am. Rep. 799; 20 How. 427; 53 Kan. 1080; 193 Mass. 289; 28 Cyc. 1576.

Parol proof of suretyship agreement. 95 U. S. 474; 8 Cyc. 262; Brandt on Suretyhsip, 3rd Ed., Sec. 454; 180 Pa. 165; 78 N. Y. 74; 51 Cal. 162; 43 L. R. A. 474.

Duty of bank towards surety. 89 Fed. 464; 34 Fed. 104; 18 Ind. 281; 7 Mass. 518; 4 Johns. Ch. 123; 37 L. R. A. 699; 32 Cyc. 216; 8 L. R. A. 944; 37 L. R. A. 699; Daniels on Negotiable Instruments, 6th Ed., Sec. 1311; Page 707, Vol. 37, L. R. A.

Court erred in refusing to permit inquiry with reference to statement made by Bowlds. Sec. 3026, C. L. 1897.

Insufficient verdict. Sec. 2685, C. L. 1897; 42 Mo. 169; 60 Mo. 24; 18 Mo. App. 583; 31 Mo. App. 555; 51 Mo. App. 260; 74 Mo. App. 1; 9 Ill. 136; 1 Gilm. 347; 20. Am. Dec. 179; 13 Cyc. 422; 2 Rawle 53; 8 W. & S. 47; 1 Am. Dec. 439; 44 Mo. App. 42.

Court erred in refusing to grant appellant's motion to amend his motion for new trial. Sub-Sec. 136. Sec. 2685, C. L. 1897; 92 Ala. 79; 123 N .C. 660; 26 Wend. 143.

FRANCIS C. WILSON, for Appellee.

It is the general rule that when both parties request directed verdict, there is a submission of whole case to court

and its decision on facts has same effect as verdict of jury. 16 N. M. 414; 14 N. M. 502; 38 Cyc. 1503; Ann. Cases 913, p. 1342; 157 U. S. 154; 153 U. S. 216; 148 U. S. 71; 47 Col. 263; 21 Col. App. 416.

Parol proof of alleged suretyship agreement inadmissable. 12 Neb. 138; 8 Cyc. 262; Daniels on Negotiable Instruments, 6th Ed., Sec. 119; 95 U. S. 474; 90 Mass. 47; 41 Cal. 322; 157 Ill. 255; 15 Ind. 114, 243; 59 Ia. 73; 41 Miss. 616; 26 Mich. 93; 17 Wend. 190; 7 N. Y. State 273; 36 Tenn. 512; 76 Tenn. 586; 73 Am. Dec. 529.

Bessemer Bank had no notice of alleged agreement between Norment and Perry and accepted note without knowledge of alleged conditions attached to Norment's suretyship. 166 U. S. 277; 176 Pa. 513; 54 S. E. 977; 8 L. R. A. 949; 6 Peters 51; 37 N. J. L. 307.

Miscellaneous. Jones on Ev., 2nd Ed., Sec. 852; 8 Cyc. 141; 131 Ala. 211; 108 Cal. 25; 47 Ind. 559; 5 N. M. 427; 135 Pac. 454; 85 Am. Dec. 610; 30 Minn. 368; 33 Pac. 1; 12 Tex. 54; 8 Ind. 315; 38 Cyc. 1880.

RENEHAN & WRIGHT, on motion for rehearing.

"Inducement," Vol. 4 Words and Phrases; 51 Ky. 178; 31 Pac. 204; 5 Abb. Pr. 41; "Consideration", Vol. 2 Words and Phrases; 72 Ala. 294; 120 Mass. 449; Cent. Enc. and Dic., Vol. 2; word "cover", 24 S. E. 751; Vol. 7 Words and Phrases; "remain", 5 So. 833; 3 L. R. A. 661; 10 Barb. 223; "keep", Words and Phrases, Vol. 7; Stearns on Suretyship, Secs. 2, 17; 21 Wall 657; 2 Wall 235; 2 Am. Dec. 291; 32 Cyc. 216; 4 Johns. Ch. 123; 37 L. R. A. 699; Daniels on Negotiable Instruments, 6th Ed., Sec. 1311; Brandt on Suretyship, Vol. 1, 3rd Ed., Secs. 480, 496; 166 U. S. 277; supra; Sec. 3026, C. L. 1897.

## STATEMENT OF FACTS.

On June 24th, 1909, N. A. Perry requested the appellant to sign with him a note to the Bessemer Bank, of Pueblo, Colorado, for two thousand dollars, said Perry representing to appellant that he would permit the money procured on said note to remain on deposit in said bank, as security for the payment of the note, and that he would also further secure the payment of the note by depositing with the

bank as collateral security twenty shares of stock of the American Bank & Trust Company, of Clovis, New Mexico. Upon the faith of such representations appellant signed the note with Perry, writing after his signature the word "surety." Perry sent the note to the Bessemer Bank, together with the twenty shares of stock which he had agreed to deposit as collateral security, and instructed the bank to place the proceeds to the credit of the Savings Bank of Melrose, which was done. The business with the Bessemer Bank was transacted through C. H. Bowlds, acting Vice President of that bank. At that time Bowlds was also Vice President of the Savings Bank of Melrose. Perry was also an officer of the Melrose Bank, and Sandell, appellee herein, was the cashier of the Bessemer Bank. The Melrose Bank credited Perry's account with the $2,000 so placed to its credit by the Bessemer Bank, which sum was subsequently paid out by the Melrose Bank on Perry's checks and drafts. The Melrose Bank drew, at different times, on the Bessemer Bank, four drafts, each for the sum of $500, which were all paid by the Bessemer Bank, without objection, except the last. This draft it refused to pay, because it alleged that the Melrose Bank had agreed to keep $2,000 on deposit with it. Legal proceedings were instituted by the Melrose Bank to compel the payment of the draft, whereupon it appears that it was paid.

After maturity of the note, the Bessemer Bank transferred the same to J. H. Sandell, appellee herein, who instituted this action against appellant to enforce the payment of the same. In his answer to the complaint appellant admitted the execution and delivery of the note sued upon; that it was past due and unpaid, and set up several different grounds of defense only two of which, however, in view of the propositions discussed by counsel for appellant in their brief, need be considered. These may be briefly stated as follows: (1) that the act of the Bessemer Bank in permitting the withdrawal of the $2,000 on deposit was an affirmative act on the part of the creditor, detrimental to the surety, and released him, and, (2) that the Bessemer Bank failed to dispose of the twenty shares

of stock, pledged as collateral security, as was its duty
to have done.

The case was tried to a jury, and, after all the evidence
was heard, the plaintiff moved for an instructed verdict.
The defendant, appellant here, likewise moved for an in-
structed verdict in his favor, The court sustained appel-
lee's motion, pursuant to which the jury was instructed to
return a verdict for appellee.

The appellant thereupon gave notice of a motion for a
new trial, whereupon the court announced that the motion
for a new trial would be deemed overruled, and exception
would be granted to the appellant, although the appellant
would be given ten days' time within which to prepare
and file a formal motion for new trial, and that judgment
would be entered for appellee in accordance with the prayer
of his complaint.

Thereafter motion for new trial was prepared and filed,
and formal order overruling the motion and granting
judgment upon the verdict returned by the jury, under
the instructions of the court, was entered upon the 10th
day of October, 1913. On the next day there was filed a
motion in arrest of judgment and later, while said motion
was pending, and on the 12th day of October, 1913, there
was filed in said cause an application to amend the motion
for a new trial on the ground of newly discovered evidence.
The motion in arrest and motion to amend were denied
by an order entered on the 8th day of December, 1913, and
on the next day this appeal was allowed.

### OPINION.

ROBERTS, C. J.—The first three propositions dis-
cussed by counsel for appellant in their brief are, (1)
where both parties verbally move for an instructed verdict,
such fact does not constitute a waiver of the right to a jury
trial, (2) the motion of appellee was equivalent only to a
demurrer to the evidence and (3) the suretyship agree-
ment between Norment and Perry could be established by
parol proof. Neither of these propositions need be dis-
cussed, because the evidence, viewed in the aspect most

favorable to appellant would not have warranted a verdict in his favor. It was his contention that he signed the note with Perry, as surety only, upon an agreement that Perry would leave the proceeds of the note on deposit with the Bessemer Bank, as security for the payment of the note, and that he would also deposit with the bank the twenty shares of stock of the American Bank & Trust Company, of Clovis, as collateral security for the payment of the note. He did deposit the stock as security, but failed to deposit the money, per his agreement with Norment. This money he deposited to the credit of the Savings Bank of Melrose, which subsequently withdrew the same before the maturity of the note. Appellant insists that it is competent for him to prove the relation and agreements of the parties by parol, and that the proof shows that the Bessemer Bank was cognizant of the above facts and assented thereto; that by permitting the withdrawal of the $2,000, the proceeds of the note, it released him from his liability upon the note by violating the terms of the suretyship agreement between Norment and Perry. Appellee, on the other hand, contends that parol proof of the alleged suretyship agreement between Norment and Perry was inadmissible. The legal question, however, is not involved in this case, because the evidence fails to show that the Bessemer Bank had knowledge of, or assented to the parol agreement, which of course, must be shown in order to bind it. The following excerpt from the evidence is copied from appellant's brief: .

"Testimony of J. W. Norment: 'Some time in June, 1909, I don't recall the exact date, N. A. Perry, with whom I had had former dealings, requested that I endorse his note in the sum of two thousand dollars. Mr. Perry was at that time considerably indebted to me and I hesitated to do so. His proposition was, in answer to my hesitation, that he only wanted this for a short time and didn't expect to use the money, but only wanted a credit for the ostensible purpose of boosting his credit and offered to put up twenty shares of the capital stock of the American Bank and Trust Company, of Clovis, New Mexico, of the par value of two thousands, which bank was

only a few months old at that time, and in addition thereto agreed to have the proceeds of this note placed to his credit and left in the bank during the life of the loan. In view of the circumstances and seeing where there could be no possible risk by my so doing, I signed the note in question as I did. Signed as surety.' "

'Testimony of Charles H. Bowlds: After stating that he was acting vice-president at the time the loan was negotiated; that he was an officer of the Bessemer Bank through whom all negotiations were carried on, and that he communicated all matters and things in connection therewith to the appellee, J. H. Sandell, then cashier of said Bessemer Bank, he testified as follows: 'I told Mr. Sandell that Mr. Perry had promised me that the Savings Bank of Melrose, of which I was vice-president, would keep on deposit $2,000.00 with the Bessemer Bank of Pueblo. I was vice-president of both banks. 'I told Sandell when they made application for this loan that Perry had represented to me that he would see that the Savings Bank of Melrose kept an account with the Bessemer Bank, and that he would see it was sufficient to cover the amount of the loan.' 'Q. But it was no part of the consideration for this loan that this deposit was to be made, it was simply an inducement?' 'A. That was an inducement to me to offer the Bessemer Bank.' "

"Testimony of A. B. Ellis: 'A. N. A. Perry stated to me about that time that he had arranged to borrow $2,000 from the Bessemer Bank and he wanted us to pay his drafts for $2,000 and let that amount remain in the Bessemer Bank to the credit of the Savings Bank of Melrose, which we did.' 'A. N. A. Perry stated to me that he had told the Bessemer Bank that a good part of this deposit would remain on deposit in that bank. He further stated if we needed the money to draw for it. I understood from some one, probably from Perry, that Norment was on the note and that the 20 shares of the stock of the American Bank & Trust Company of Clovis, N. M., were put up as collateral for the loan.' 'A. We drew on them three drafts of $500 each which were paid. After they had paid the second one, they wrote us that Perry had stated to

them that a large part of this deposit would remain there and my recollections are that they objected to pay any more of this deposit, but they afterwards paid the third draft. We made a fourth draft on them for the balance of the account, $500, on which payment was refused. We drew again for the same amount and the draft was returned unpaid and protested.' "

The foregoing is all the evidence upon which appellant relies to establish knowledge on the part of the bank, of the agreement in question. Waiving the question as to the proper weight to be given the testimony of A. B. Ellis, the material portion of which was clearly inadmissable under the hearsay rule, it would not have warranted a verdict for appellant. All that it shows is, that Perry agreed with the Bessemer Bank, as an inducement to it to make the loan, that the Savings Bank of Melrose would keep an account with it, which would be sufficient to cover the amount of the loan. He did not agree that the deposit of the Melrose Bank should stand as security for the repayment of the money, nor did he state to Ellis that he had so told the Bessemer Bank. Suppose the Melrose Bank had on deposit with the Bessemer Bank the sum of two thousand dollars at the time this suit was instituted, how could appellant benefit thereby, unless the money, so on deposit, had been pledged for the payment of the note? Ellis said in his testimony, "Perry stated to me that he had told the Bessemer Bank that a good part of this deposit would remain on deposit in that Bank." But he does not say, that Perry stated that he had said to the Bessemer Bank that it should stand as security, or a pledge, for the payment of the note in question. There is no inconsistency between the testimony of Bowlds and Ellis. Bowlds said that Perry agreed that the Melrose Bank would carry a deposit with the Bessemer Bank, as an inducement to the latter bank to make the loan.

The testimony fails in several particulars: (1) Because it does not appear that Perry told Bowlds or any one else connected with the bank that Norment had signed the note conditioned upon the amount realized therefrom remaining in the bank during its life. (2) Because it does

not appear that Perry told the bank officials that the money was to remain in his name during the life of the note, but that the Bank of Melrose was to keep a deposit in the Bessemer Bank of $2,000 during the life of the note.

The failure shown under (1) is fatal to the contention of the appellant, for the reason that his entire case must rest upon the proposition that the bank was advised that he signed as surety subject to the alleged agreement between him and Perry. If the bank was not informed that such was the condition attached to his contract, then the bank could look to him for payment at maturity regardless of any statement by Perry that the fund should remain in the bank during the life of the note. It is evident that any agreement between Perry and Norment would not be binding upon the bank when it sought to pursue the surety, unless it should be conclusively proven that the bank had knowledge of the agreement. Nelson et al., vs. Flint, 166 U. S. 277; 41 L. Ed. 1902.

In the foregoing case, Mr. Justice Brewer for the court, laid down the law as follows:

"It is alleged that the trial court erred in ruling. out evidence of a conversation between Frank J. Cannon and A. H. Cannon in the absence of the plaintiff—a conversation which it was claimed induced A. H. Cannon to sign the note. The mere statement of the proposition carries its own answer. Conversations between two makers of a note, in the absence of the payee, are clearly not binding upon the latter. No representations, true or false, made by one maker of a note to another, no secret understanding between such makers, no inducements offered by one to the other, affect the validity of the instrument in the hands of the payee unless he knew or was chargeable with notice of such facts. The vital question is not what passed between the makers by themselves, but what passed between the payee and any one of the makers."

Under (2) it is apparent that whatever the rule is concerning the duty of the bank to apply a deposit of the maker of the note in the bank to the payment of the obligation, it was not its duty to apply the account of the Savings Bank of Melrose to pay the note at maturity

and in fact, the Bessemer Bank could not do so under the law. In other words, the contention of appellant applies only to cases where the deposit was in the name of the maker of the note, and does not apply where the deposit is not in the name of the party primarily responsible on the note. First Nat. Bank vs. Peltz, 176 Pa. 513; 36 L. R. A. 832; 53 Am. St. Rep. 686.

The above being true, nothing would be gained by a discussion of the legal propositions presented by appellant on this phase of the case.

Appellant next discusses the effect of the failure of the Bessemer Bank, or Sandell, its assignee to dispose of the twenty shares of stock of the American Bank and Trust Company, which had become insolvent prior to the trial, thereby rendering the stock worthless. It is contended by appellant that the bank and its assignee were bound to exercise active vigilance in protecting and disposing of this collateral; that having held the same after maturity of the note until the stock became worthless, the appellant was thereby released. There are two answers to this proposition: First, the evidence shows that appellee did attempt to sell the stock, and the only offer he received was from appellant who offered to pay $1,600 for it, conditional upon appellee drawing upon Perry for the balance of the indebtedness. A sufficient answer to this is, that appellant should have paid the entire indebtedness, which, had he done so, would have entitled him to the stock and all equities therein held by the appellee. The second answer is that the mere passiveness of the creditor in the collection of his debt, either of the principal debtor, or from collateral securities held by him is not sufficient ground for discharging the surety. Vance v. English, 78 Ind. 80, and see note to case First National Bank vs. Kittle, 37 L. R. A. (N. S.) 699. While it is true the case of Bank vs. Kittle announces a contrary doctrine, the weight of authority and reason accords with the rule above stated. In the note above referred to all the authorities are reviewed and very little support is found for the minority rule.

What we have said above disposes also of the alleged error in excluding appellant's exhibits 3, 5, 6, 7 and 8, which were letters exchanged by appellant and the bank and appellee relating to the disposal of the bank stock and the collection of the note. In no one of these letters did appellant ever offer to pay the note, or to pay the difference between what he offered for the stock and the amount due on the note. The primary duty of the surety was to pay the note, principal and interest, upon maturity, upon the failure of his principal to meet the obligation and thereby obtain possession of the collateral. By this means he could have saved any loss which he now alleges he has sustained by virtue of depreciation.

The following questions were propounded to the appellee on cross examination:

"Did you get anything at the time you got this note?"

"At the time you acquired this note state whether or not you acquired any shares of stock in the American Bank and Trust Company, of Clovis, New Mexico."

In both instances the court refused to permit the witness to answer. This, appellant claims was prejudicial error. Prior to this time, and upon the beginning of the trial the appellee produced in court the shares of stock in question, and the record shows that he tendered the same to appellant upon payment of the amount due on the note. The record also shows that this stock was deposited with the clerk, for the use and benefit of appellant, upon payment by him of the judgment. This being true, we fail to see how he has been damaged by the exclusion of the evidence.

The deposition of C. H. Bowlds was taken on behalf of appellant, some time prior to the trial. In the deposition this question appears:

"Look at the statement headed 'statement of Mr. C. H. Bowlds in respect to the case of Sandell vs. Norment and Perry' and state whether or not that is a statement made by you in the presence of A. B. Renehan and Stella V. Canny, and transcribed by her, and if so, state whether the statement is true?"

The answer to the question is not shown by the record.

On the trial in the district court the appellant sought to introduce the statement in evidence, for the purpose of contradicting and impeaching the witness. The court held that the statement was not admissable under the showing made. This ruling was correct. The statement was not incorporated into the deposition at the time it was taken, and no proper foundation was laid for its introduction. Appellant did not even offer to show that the statement which he proposed to read to the jury was the same statement which had been exhibited to the witness at the time his deposition was taken.

It is next insisted that the court erred in awarding attorney's fees, because there was no allegation in the complaint to support the same. In this counsel are mistaken. The note is set out in the complaint, and contains an agreement to pay ten per cent attorney's fees upon the amount recovered by suit. The complaint also prays judgment for such recovery. Exchange Bank vs. Tuttle, 5 N. M. 427; 7 L. R. A. 445.

The verdict returned by the jury, under the direction of the court reads as follows:

"We, the jury, find the issues in this case for the plaintiff".

Sub-Section 114, Section 2685, C. L. 1897, reads as follows:

"When a verdict is found for the plaintiff in an action for the recovery of money, or for the defendant, when a set off for the recovery of money is established beyond the amount of the plaintiff's claim as established, the jury must also assess the amount of the recovery, etc."

Appellant contends that the verdict is not sufficient to support the judgment, which question was duly raised in the district court by motion in arrest of judgment, and in his motion for new trial. The answer of the appellant confessed the execution of the note, its delivery to the Bessemer Bank and every essential to constitute a confession of the obligation incurred, but set up in avoidance the defense of a violation of an alleged suretyship agreement.

This defense presented the only issue for the jury to try. The amount of the note, the interest due and attorney's fees was, under the provisions of the note, and the averments of the answer, only a question of computation, which the court could make, or direct the clerk to make. The statute, in our judgment, was only intended to require the jury to find the amount of recovery, when the question as to the amount due was one of the litigated questions in the case. It can not reasonably be held to apply where the amount of recovery is admitted, if some other disputed question, upon which liability rests, is decided adversely to the party liable for the payment of the money. That this is the correct interpretation of the code provision is established by the following cases: Buzanes vs. Frost, 19 Colo. App. 388; Hutchinson vs. Superior Court, 61 Cal. 119; Cooper vs. Poston, 1 Duval 92, 85 Am. Dec. 610; Moke vs. Felman, 67 Am. Dec. 656; Wines vs. State Bank of Hamilton, 22 Ind. App. 114.

While the better practice would be to have the jury, in all cases for the recovery of money, state in the verdic' the amount of the recovery, yet, where the amount of the recovery, if a recovery is to be had, is not in dispute and can be ascertained from the pleadings, the rule that that is sufficiently certain which can be rendered certain, applies.

Appellant filed a motion for new trial and later filed an amendment to said motion setting up the fact that N. A. Perry would testify that Norment signed said note as surety on an express understanding with him that he was to deposit the proceeds of the note with the Bessemer Bank, which said deposit should remain on deposit with said bank as security for said loan and that he had communicated all of said facts to Bowlds, the acting Vice-President of the Bessemer Bank at the time he made the loan; that the fact that said Perry would so testify was unknown to appellant. Diligence in procuring the testimony of this witness, and ascertaining what he would testify to is set forth in the application in the following language:

"It was impossible to procure the said Perry as a witness because he was beyond this jurisdiction, and although for more than two years efforts were made by the defendant, Norment, and his counsel to procure either the attendance of the said Perry as a witness on his part, or a deposition from him, as to what he knew, the said Perry refused to answer communications on the subject, refused to become a witness, either by deposition or otherwise, and the said Norment was without power and the courts of New Mexico were without power, and it was impossible to procure the testimony of the said Perry in any way, because of his non-residence as aforesaid, and only now has the said defendant, Norment, or his counsel, been able to learn from said Perry the facts of the said case, or to get any response from him on the subject."

Did the court abuse its discretion in refusing to grant a new trial on the ground stated? Appellant knew necessarily that whatever knowledge the Bessemer Bank had, as to the conditions and terms upon which he had signed the note with Perry, was communicated to its officers and agents by Perry, at the time he negotiated the loan. He does not claim that it derived knowledge from any other source. This being true, he knew from the time the suit was instituted, viz: July, 13, 1910, that it was highly important for him to procure Perry's testimony, or at least to ascertain just what facts Perry had communicated to the officers of the bank at the time he made the loan. This being true, did he exercise the required diligence? Perry was beyond the jurisdiction of the court, and of course appellant knew that he could not require him to attend and testify at the trial. His only recourse was to take his deposition. Had this been done, even though he did not know what facts Perry would testify to, he could easily have ascertained. His defense depended entirely upon the facts Perry had communicated to the bank. Perry, of course, knew, and appellant was cognizant of Perry's knowledge. Consequently it was incumbent upon him to exercise due diligence in procuring his testimony. The showing made, fails to show that he exercised the required diligence.

Where a party to a suit is cognizant of the fact that a
witness residing beyond the jurisdiction of the court,
**6** can testify as to certain facts, material to the issues
in the case, it is his duty to take the deposition of the
absent witness, and where he does not do so, or attempt to
do so in good faith, he cannot procure a new trial, on the
ground of newly discovered evidence, based on facts as to
which such witness will testify.

Here the showing, excusing the failure to take his de-
position is that the "said Norment was without power and
the courts of New Mexico were without power, and it was
impossible to procure the testimony of the said Perry in
any way because of his non-residence as aforesaid." Ap-
pellant does not allege the place of residence of said Perry,
nor that under the laws of the state of his residence, the
courts of such state had no power to compel the attendance
and testimony of a witness to be used in judicial proceed-
ings in other states. Where a party seeks to justify a fail-
ure to take the deposition of a witness, residing within
**7** another state, it is incumbent upon him to establish
the fact that under the statutes of the state where
the witness resides, no power exists in the courts of that
state to compel the attendance and testimony of the wit-
ness. This, it will be noted, appellant failed to do. There-
fore there was no abuse of discretion in denying the mo
tion for a new trial on this ground.

Lastly it is urged that appellant's counsel were entitled
to notice of the entering of the judgment, under Sub-Sec.
136, Sec. 2685, C. L. 1897. At the time the verdict of the
jury was returned the court announced that the motion for
a new trial would be considered filed, as of that date, and
overruled, and judgment would be entered for the appel-
lee. The statute provides upon any hearing before the
judge of a court wherein the judgment of the court upon
such hearing shall not be rendered at the time of such
hearing, but shall be taken under advisement by the judge,
no judgment or order relative to the matters pertaining to
such hearing shall be entered until notice of the same shall
have been given to the attorneys for the respective parties
in the action." The statute itself discloses the lack of

merit in this assignment. The judgment was rendered by the court immediately upon the return of the verdict by the jury, although possibly not entered until a later date. This statute plainly refers to the formal announcement by the court of its judgment, not to the entry of the same by the clerk.

For the reasons stated, the judgment of the trial court will be affirmed, and, IT IS SO ORDERED.