CASE 99.—CONSOLIDATED ACTIONS BY MAGGIE HATCH
        AGAINST C. DONNELLY AND OTHERS IN WHICH
        DEFENDANTS FILED A CROSS PETITION MAK-
        ING PHILLIP DINE A DEFENDANT.—Oct. 13, 1909.

## Dine v. Donnelly, &c.

Appeal from Kenton Circuit Court (Criminal Law
and Equity Division.)

W. McD. Shaw, Judge.

Judgment against Dine on the cross petition and he
appeals.—Affirmed:

1. Sheriffs and Constables—Indemnifying Bonds—Action Against
   Surety—In an action against a surety on an indemnity bond
   to an attaching sheriff, a defense that the sheriff, in levying,
   had acted wantonly, willfully, maliciously and contrary to
   the attaching creditors' instructions, was an affirmative de-
   fense, the burden to establish which rested upon the surety.

2. Sheriffs and Constables—Levy on Property—Willfulness—Evi-
   dence.—Evidence held not to show that a sheriff acted will-
   fully and maliciously and against the wishes and directions
   of attaching creditors in levying an attachment.

3. Judgment—Conformity to Verdict.—Where defendant denies
   all liability, and the amount claimed was not disputed, if
   any liability attached, a verdict for plaintiff was sufficient
   to support a judgment for the amount sued for.

4. Pleading—Cross Petition—Office.—Civ. Code Prac. Sec. 96,
   subsec. 3, defines a cross petition to be the commencement
   of an action by defendant against a codefendant or some per-
   son not a party to the action, and which is not allowed to a
   defendant except upon a cause of action, which affects, or
   is affected by, the original cause of action. Plaintiff sued on
   a sheriff's bond for wrongful levy on her property. She
   pleaded the execution of the bond by the attaching creditors
   indemnifying the sheriff, but for which the attachment would
   not have been levied. Held, that a cause of action by the
   sheriff's sureties over against the sureties on the indemnify-
   ing bond was so intimately connected with the other cause

of action that the sheriff's sureties could proceed against the sureties on the indemnifying bond to be subrogated to sheriff's right thereunder by cross petition in the original action.

5. Pleading—Trial Amendments—Discretion of Court.—The Code gives the trial judge a broad discretion in permitting and re-refusing trial amendments to pleadings, and where litigation over an attachment of goods had been pending for ten years and a former action by the owner against the sheriff and his bondsmen had brought out the place where the goods had been stored and the extent to which they had been damaged, so that if a surety on a bond of the attaching creditors, who were sued by the sheriff's sureties, had wished to defend on the ground that damage to the attached property was due to the negligence of the sheriff in caring for the goods, instead of through the willful acts of the sheriff contrary to instructions, and in disregard of the creditors' command, which was the issue upon which the parties went to trial, he could have made the defense at an earlier date, the court did not abuse its discretion in refusing an amendment setting up the defense during the progress of the trial and after the evidence had in part been introduced.

6. Subrogation—Bonds—Right of Sheriff's Sureties to be Subrogated to His Right on Indemnifying Bond.—Where one has been compelled to pay a debt for which another was primarily liable, he is entitled to be subrogated to the rights of the creditor; and where sureties on the official bond of the sheriff had been obliged to answer for the default of their principal in making an erroneous seizure of property, they are entitled to be subrogated to his rights in an indemnity bond given him by the attaching creditors.

CHAS. H. FISK and STEPHENS, LINCOLN & STEPHENS for appellant.

ROBERT C. SIMMONS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In 1896 the Robert Mitchell Furniture Company and the Geo. F. Otte Company filed suits in the Kenton Circuit Court against L. S. Hatch, wherein they sought to recover of him certain moneys which they

alleged to be due them for household goods sold to
him. Each caused a general order of attachment to
be issued and placed in the hands of the sheriff, John
O'Donnell. The sheriff, before executing the order
of attachment, demanded an indemnifying bond as
provided for by section 211 of the Code, and the fol-
lowing bond was thereupon given:

"We undertake to indemnify John O'Donnell,
sheriff of Kenton county, Kentucky, against any dam-
age he may sustain by reason of the levy of the attach-
ment in this action. Ph. Dine, P. Dine, by H. H.
Dine."

After the indemnifying bond above set out had been
executed, the deputy sheriff, having the orders of at-
tachment to be served, called upon William Goebel,
attorney for plaintiffs for instructions, and was di-
rected by him to levy "on everything in sight" at the
Hatch residence. Armed with this instruction, the
said deputy, accompanied by a representative from
the house of each plaintiff, went to the residence
of Hatch, and in the absence of both himself and
his wife levied upon and took therefrom all of
the household goods and effects therein. When the
property was removed from the Hatch residence,
it was stored by the sheriff in a storage room in
Covington. Each of the plaintiffs endeavored to
hold all the property attached as belonging to L. S.
Hatch, while Maggie Hatch, his wife, sought to have
the attachment discharged as to that part of the
household goods which had not been sold by plaint-
iffs, and claimed the property, which she thus
sought to have discharged from the attachment,
as her own individual property. This litigation, be-
tween Mrs. Hatch and the attaching creditors, was
from the start spirited, and the attempt on the part

of plaintiffs to subject her property in satisfaction of their debts was, at the expiration of about two years from the institution of the suit, defeated by Mrs. Hatch.   When she finally recovered her property, she instituted two suits against the administrator of the sheriff, who had died in the meantime, and the sureties of his official bond.   In each of these suits she sought to recover damages for the wrongful taking and withholding of her property.   The suits were consolidated, and she finally recovered a judgment against the administrator and the sureties on the sheriff's bond for $650.   To these actions Dine, the surety on the indemnifying bond, was made a party defendant, and was later made a defendant to the cross-petition filed by the sureties of the sheriff, who sought to be subrogated to the rights of their principal in the indemnity bond executed by the attaching creditors.   Upon the trial of the issues between the sureties on the sheriff's bond and Dine, the surety on the indemnifying bond, judgment was finally rendered in favor of the sureties on the sheriff's bond for the amount which they had been compelled to pay Mrs. Hatch.   To reverse this judgment, Phillip Dine, the surety on the indemnifying bond, prosecutes this appeal.

A great many reasons are urged why the judgment should be reversed, and we have given to each a careful consideration.   The suit filed by Maggie Hatch, wherein she sought to recover of the sheriff and his sureties on his official bond damages for the wrongful seizure and withholding of her property, are identical in all respects, except that in one she charges that certain property was taken by the Mitchell Company and in the other by the Otte Company. She alleged that, prior to the taking of her goods by

the sheriff, he had been warned not to do so, and that he had procured an indemnifying bond, signed by Phillip Dine, before making the levy; that the sheriff placed her said goods in a storeroom, and held and kept same in his possession until ordered by the court to deliver them to her; that when the goods were returned to her they were in a badly damaged condition, many of the articles were rendered absolutely useless, and the carpets and curtains were eaten by moths and rats, and all so badly damaged as to be almost unfit for use. These allegations were denied, and in addition the sureties on the bond made their answer a cross-petition against Dine, the surety on the indemnifying bond, and prayed judgment over and against Phillip Dine, the surety on said indemnifying bond, for such sum as they might be required, under the judgment of the court, to pay.

After filing various preliminary motions, Phillip Dine answered. The plaintiff, Mrs. Hatch, was called upon to elect whether she would prosecute her claim against Dine, the surety in the indemnifying bond, or the appellees, the sureties on the sheriff's bond, and she elected to proceed against the latter. The issue between plaintiff, Mrs. Hatch, and the appellees having been tried, with the result above indicated, and appellees having satisfied said judgment, they, appellees, filed an amended cross-petition against appellant, Phillip Dine, setting out in detail the trial and judgment rendered in favor of Mrs. Hatch, the satisfaction of same by them, and prayed judgment against him for the amount which they had so paid. To this cross-petition he answered, and charged that the sheriff had acted wantonly, willfully, and maliciously, and contrary to the instructions and in utter disregard of the direct command of the plaintiff. Is-

sue was joined by the reply on these allegations of the answer, and upon a trial thereof before a jury the judgment from which this appeal is prosecuted was rendered.

The trial court held that as appellant admitted that his principals had caused the orders of attachment to be issued and levied, but alleged that the sheriff, in levying same, had acted wantonly, willfully, maliciously, and contrary to their direct instructions, the burden rested upon him to establish this fact.   Of this ruling we think he may not complain; for, unless the sheriff did proceed in the manner set out in his answer, the plaintiffs, who procured the order of attachment and directed its levy, would clearly be liable.   The record shows that the employes of the attaching creditors who accompanied the sheriff when he made this levy wanted to take the property, or portions thereof, out of the hands of the sheriff and across the river to their respective places of business in Cincinnati.   This the sheriff refused to permit them to do, and while there is some testimony tending to show that certain articles were pointed out by them as not having been sold, and which they did not want to take, when notified that their lawyer had instructed him to make a clean sweep, "take everything in sight," they made no objection, and the sheriff, following his instructions, took everything.

The decided weight of the evidence is against the contention of appellant that the sheriff acted wantonly, willfully and maliciously, and against the wishes and direction of the plaintiffs in levying the attachment; and the conduct of the attaching creditors during the extended litigation over this property between them and Mrs. Hatch shows that they were endeavoring to hold all the property which had been

attached. A complete inventory of what was taken was returned with his report to them, and upon examination of this inventory they were fully advised as to what had been taken. The fact that they sought to hold it all, and offered to release none of it, is, while not conclusive, most persuasive evidence that the sheriff was acting in accordance with, rather than against, their express direction in seizing all the property that he found at the home of the defendant Hatch and his wife. On the state of the pleading, the burden was upon appellant to make out his case, and the court properly so held.

The proof abundantly supports the finding of the jury, and while complaint is made that their verdict was not in form, still as the amount was not in controversy, a finding on the part of the jury in favor of plaintiff was sufficient to support the judgment predicated thereon. The instructions plainly told the jury the amount which the cross-petitioners were entitled to recover if they found for them.

In the case of Cooper v. Poston, 1 Duv. 92, 85 Am. Dec. 610, this court held, in an action on a note, where the only defense was a plea of usury, that a verdict, "we, of the jury, find for the plaintiff," would support a judgment for the amount of the note and interest. And in the cases of Brannin v. Foree, 12 B. Mon. 506, and Jackson v. Hill, 58 S. W. 434, 22 Ky. Law Rep. 563, this principle, that what can be made certain is certain, was recognized and applied. In 29 Am. & Eng. Ency. of Law, 1021, the rule is thus stated:

"Where the amount is not actually in issue, a simple finding for the plaintiff or the defendant is usually sufficient, without specifying any particular sum." Here appellant denied all liability. The amount

claimed was not disputed, if any liability attached, and hence a verdict in favor of the plaintiff necessa rily meant for the amount sued for.

We next come to consider the question as to whether or not appellees might proceed against appellant by cross-petition. Subsection 3 of section 96 of the Civil Code of Practice defines a cross-petition to be "the commencement of an action by a defendant against a codefendant, or a person who is not a party to the action, * * * and is not allowed to a defendant except upon a cause of action which affects, or is affected by, the original cause of ac- tion." The test, then, as to whether or not they might properly in this case proceed by cross-petition is: Was the action asserted by appellees affected by the cause of action asserted by Mrs. Hatch against O'Donnell? Clearly it was. In the suit of Mrs. Hatch against O'Donnell, she pleaded the execution of the indemnity bond, but for the execution of which the attachment would not have been levied at all. There- fore the execution of the indemnity bond caused the levy of the attachment which resulted in the dam- age to Mrs. Hatch. Clearly the causes of action are so closely and intimately connected that appellees were justified in proceeding as they did. In the case of Gibson v. Ky., etc., Ben. Society, 8 Ky. Law Rep. 520, a case somewhat similar to the one under con- sideration here was presented. There the society, without authority, issued a certificate of membership, in which it contracted to pay the amount due upon the death of a member to one other than a member of his family. The member died, and the society paid the amount due to the named beneficiary. Under its charter the death benefit belonged to the widow and children of the member, and they sued the society

to recover the amount due them. In the same action the society filed a cross-petition against the person to whom it had paid the fund, and asked that it recover judgment against him for the amount so paid, if it should be held answerable to the widow and children of the deceased member therefor, and upon appeal here it was held that the cross-petition could be maintained. This, if anything, is a stronger case than the case at bar, for the reason that in that case the beneficiary named, so far as the record shows, had been in no wise instrumental in procuring the deceased member to name him as beneficiary. And again, in the case of Edwards v. Grimes Bros., 66 S. W. 515, 23 Ky. Law Rep. 2055, where the suit was brought to enforce the purchase-money lien, the defendant was permitted to prosecute a cross-action to quiet the title to the same property against persons claiming it. And in Trabue v. McAdams, 8 Bush, 80, a lessee, who was sued for rent, was permitted in the same action by cross-petition to proceed against a sublessee to compel him to pay his portion of the rent and release the lessee from responsibility therefor.

Several authorities are cited and relied upon by appellant in support of his contention that this is not such a claim as might be asserted by cross-petition. But a careful analysis of those cases shows that they are not in point. The case of Royse v. Reynolds, 10 Bush, 286, was an equitable proceeding, wherein one Fee sought to enjoin Royse from enforcing a judgment against him on the ground that he was surety only and had been released from liability by lapse of time. Royse, by cross-petition, then sued the sheriff, Reynolds, for breach of duty by the latter

in failing to return an execution for more than 30 days after return day and in failing to sell certain property levied upon. The court, in holding that he could not maintain the action by cross-petition, said: "There is no connection whatever between these causes of action and the subject-matter of Fee's suit, except that Fee was a party defendant in the judgment upon which the execution issued. None of his property had been seized, and he was released, if at all, not by the delay or neglect of the sheriff, but by the want of diligence on the part of Royse." Thus it is seen the right of Royse to recover from the sheriff for failure to return the execution neither affected, nor was affected by, the right of Fee to enjoin the collection of the judgment from which he had been released by lapse of time. And so, also, in the case of Wells v. Boyd, 1 Duv. 366, relied upon, we find that the right to proceed by cross-petition was denied, because the right of Preston to recover from Boyd on the note did not affect the right of Boyd to recover from Wells on the warranty.

During the progress of the trial, and after the evidence had in part been introduced, appellant offered to file an amended answer, to the filing of which appellees objected. The court sustained the objection and refused to permit the amendment to be filed, and of this ruling appellant now complains. The Code gives to the trial judge a broad discretion in permitting and refusing amended pleadings to be filed, and it is at times difficult to determine when, in pursuance of justice, this discretion on the part of the trial judge should be interfered with. The issue, as made up and upon which the parties had gone to trial, was

as to whether or not the sheriff had proceeded wantonly, willfully, maliciously, and contrary to instructions and in utter disregard of the direct command of the appellant. In the amendment offered, appellant set out that the damage to the property of Mrs. Hatch was due to negligence of the sheriff in storing and caring for the goods. The issue upon which the case was being tried had been made for nearly there years. The litigation had been pending for about ten years. During the time that the pleadings were being made up, appellant had filed a great many motions and had presented his defense in almost every conceivable form, and if he had wanted to make this defense which he sought to inject into the case almost at the conclusion of the trial, he should certainly have done so at an earlier date. All of the facts upon which he might have based such a defense had been brought out during the progress of the trial between Mrs. Hatch and the sheriff and his bondsmen—for in that trial it was shown where the goods had been stored and the extent to which each article thereof had been damaged—so that appellant did not present a case which appealed to the sense of justice of the trial court when, after so long a delay, and almost at the conclusion of the trial, he was proposing to make a new issue. Under these circumstances the trial judge was waranted in refusing to permit the amendment to be filed. To have done so would have necessarily prolonged the trial, if, in fact, it had not necessitated the continuing of the case.

The only remaining question which we deem it necessary to consider is the right of the sureties on the sheriff's bond to be substituted or subrogated to the rights of the sheriff on the indemnifying bond.

This is the principal, if not the only, question in the case. The sheriff took the indemnifying bond to protect him against possible loss resulting from the seizure of the property, about which he entertained some doubt as to whether or not it was liable to seizure and sale under attachment. Having levied upon the property, and being held answerable in damages for doing so, the sureties on his official bond were required to pay the damages assessed against him. Why are they not entitled to be subrogated to the rights of the sheriff on the indemnifying bond? We find no case directly in point in this state; but the text-writers, with a degree of uniformity, hold that the state of facts here presented is such as entitles the sureties to be subrogated to the rights of their principals. In 27 Am. & Eng. Ency. of Law (2d Ed.) p. 221, we find the principle thus stated: "As a general rule, sureties on the official bond of a sheriff, who have been obliged to answer for the default of their principal, are entitled to relief by subrogation. Thus, where they pay a judgment against the sheriff for an erroneous seizure of property, they will be subrogated to his rights in respect to any indemnity which he may have demanded and received from the judgment creditor." Sheldon on Subrogation (2d Ed.) Sec. 90, thus states the rule: "The sureties of a sheriff, who have been compelled to pay a judgment recovered against him by the owner of property which he had taken on an execution against a third party and had turned over to the judgment creditor, have been allowed to recover the value of such property against that plaintiff. The sureties who had satisfied the owner were substituted to his cause of action against the creditor." In

Murfree on Sheriffs, Sec. 910, we find the following: "The right of subrogation does not rest upon contract or privity, but depends upon principles of natural justice and equity, and will be applied in favor of one who has been compelled to perform the obligations of another. Hence, when the sureties of a deceased deputy sheriff have been compelled to pay for such deputy's default, they are entitled in equity to be substituted to his rights against the creditor by whose direction the default was occasioned, and to resort to a bond taken by him from the creditor as an indemnity against the consequences of such default."

In the case of Philbrick v. Shaw, 61 N. H. 356, we find a set of facts almost identical with those here presented. There the sureties of a deceased deputy sheriff had been compelled to pay for his default in not making proper application of the proceeds of an execution. They sought to be substituted to his rights against the creditor by whose directions the default was caused, and to resort to a bond taken by him from the creditor as an indemnity against the consequences of such default. In disposing of their right so to do, the court said: "The contention of the defendant is that there is no privity of contract or obligation between the plaintiff and himself; that the condition of the bond was to save Haynes harmless, and not his sureties; and that, inasmuch as neither Haynes nor his estate has sustained any loss, the contingency upon which the obligation depended has not happened, and there has consequently been no breach of the bond. This defense is both ingenious and novel; but it has no foundation in principle or upon authority. The right of subrogation does not rest upon contract or privity, but depends upon principles of natural jus-

Dine v. Donnelly, &c.

tice and equity, and will be applied in favor of one who has been compelled to perform the obligations of another.  *  *  *  Nor was the defendant's bond for the protection of Haynes alone.  His sureties were responsible for his official conduct, and equally liable with him to make compensation to any injured party for his wrongful acts.  His protection was their protection; and, as both stood upon a common ground of interest in respect to the bond, it is to be regarded in equity as intended for the joint benefit of both, and as now held by the administrator of Haynes in trust for the plaintiff surety.  But, even if it was intended for the sole benefit of Haynes, Philbrick, having performed the obligations resulting from Haynes' default, which the defendant occasioned, and from which he derived a substantial benefit, is entitled to be subrogated to all the rights Haynes had, or would have had, if living, against the defendant, and may therefore resort to the bond as a means of reimbursement.  *  *  *  The right of subrogation exists where, from all circumstances of the case, it ought in equity and good conscience to exist.  *  *  *  This is such a case.''

The same principle is recognized and upheld in People v. Schuyler, 4 N. Y. 176, in Skiff v. Cross 21 Iowa, 459, and in Blalock v. Peake, 56 N. C. 323.

In Meyer Bros. Drug Co. v. Davis, 68 Ark. 112, 56 S. W. 788, a constable wrongfully attached and sold personal property.  The owner of the property recovered a judgment against the constable for its value, which had been paid by his sureties.  The plaintiffs in the attachment then gave to the constable a note for the amount of the judgment the owner had

obtained against him. It was held that the sureties were entitled to be subrogated to the constable's right of action on the note. And in Dowell v. Woodsides, 27 S. W. 853, 16 Ky. Law Rep. 325, a master commissioner mortgaged his property to his bondsmen to indemnify them. A litigant, who had funds in the hands of the master, brought suit, and was permitted to be subrogated to the rights of his bondsmen in the mortgage. Bispham, in his Principles of Equity, Sec. 377, in speaking of the doctrine of subrogation, says: "The principle is a general one, and will apply in every instance (except in the case of a mere stranger) where one man has paid a debt for which another is primarily liable." In case of Albro v. Robinson, 93 Ky. 195, 19 S. W. 587, 588, 14 Ky. Law Rep. 124, the sureties on the bond of a deceased executor had been held liable for his default. They sought to be subrogated to his claim for subrogation as executor, and in disposing of the matter this court said: "If entitled to compensation, this would certainly be equitable. It would be in the direction of doing complete justice, and this is the basis of the doctrine of subrogation."

As above stated, we have not, so far, been called upon to decide a case in all respects similar to the one at bar; but this court has frequently been called upon to apply the doctrine of subrogation, and it has uniformly held that, where one has been compelled to pay a debt for which another was primarily liable, the former is entitled to be subrogated to the rights of the creditor. This was the rule announced in Finn v. Stratton, 5 J. J. Marsh, 364; Perkins v. Scott, 7 Ky. Law Rep. 608; Ely v. Harvey, Keith & Co., 6 Bush, 620; Ogden v. Totten et al., 34 S. W. 1081, 17 Ky. Law Rep. 1390; Nesbit v. Wood, 56 S. W. 714, 22 Ky.

Law Rep. 128; Riddle v. Riddle, 80 S. W. 1129, 26 Ky. Law Rep. 231; Treadway v. Pharis, 18 S. W. 225, 13 Ky. Law Rep. 787.

In each of the foregoing cases the principle that one who has paid a debt for which another was primarily liable was entitled to be subrogated to the rights of the creditor was fully recognized and upheld. In the case at bar the sheriff had executed a general official bond as a guaranty to the public and the commonwealth that he would faithfully and according to law discharge the duties of his office. As a part of those public duties he was required to execute the orders of the court that came to his hand. When the plaintiffs, in the original suits, caused the orders of attachment to be issued and placed in his hands, it at once became his duty to levy same upon any property of the defendant that he could find that was subject to execution. The plaintiffs in the suit desired that he should levy upon all the property of the defendant which the sheriff might find in defendant's home. This the sheriff declined to do until the defendants had executed the indemnifying bond as above set out. The levy having been made, and the right of the sheriff to take the attached property being contested it was found that he had acted beyond his lawful authority in so doing, and the sureties on his bond were compelled to pay the judgment recovered against him because of this illegal levy. They at once became creditors of the sheriff to that extent, and, under the well-established rule announced by all text-writers and by courts of last resort generally, they were entitled to the benefit of any security which he had taken from the plaintiffs guaranteeing him

against loss. Thus they became clearly entitled to the same benefit and protection under the indemnifying bond which accrued to the sheriff himself. The trial court correctly held that the record presented a state of facts authorizing and justifying the application of the doctrine of subrogation.

Perceiving no error in the conduct of the trial pre·judicial to the substantial rights of appellant, the judgment is affirmed.