HOME TRUST COMPANY, a Corporation, Appellant, v. REUBEN JOSEPH-SON.—95 S. W. (2d) 1148.

Court en Banc, July 2, 1936.

*I. J. Ringolsky, Wm. G. Boatright, Harry L. Jacobs, Ringolsky, Boatright & Jacobs* and *David E. Glatt* for appellant.

*Leonard Ulmann* and *Julius Peltzman* for respondent.

COOLEY, C.—Appeal by plaintiff from an order of the Circuit Court of Jackson County sustaining defendant's motion for new trial. With slight modification we adopt appellant's statement of the facts, without using quotation marks, as follows:

This is a suit in sixteen counts by Home Trust Company, appellant

174

(hereinafter called plaintiff), a Kansas City banking house, against Reuben Josephson, respondent (hereinafter called defendant), on his indorsements of sixteen promissory notes for $1000 each (on which a credit was indorsed) and interest. Originally there were three additional defendants sued as trustees of the dissolved corporate maker of the notes, Fredric Hotel Building Company, but the suit was dismissed as to one of them and as to the others the jury, obeying a peremptory instruction, returned a verdict in their favor. Consequently the case stands here as a suit by the holder of the notes solely against the indorser thereof.

At the trial the court gave a peremptory instruction in favor of plaintiff on each count and, upon the verdicts returned accordingly, entered judgment for plaintiff. Thereafter the court sustained defendant's motion for a new trial, and this appeal presents the question of whether there was any justifiable ground therefor.

The petition, filed March 7, 1931, alleged as to each count that Fredric Hotel Building Corporation on May 8, 1929, executed and delivered to defendant, Reuben Josephson, sixteen notes for $1000 each, bearing six per cent interest from date, represented by attached interest coupons; that default was made in the interest due thereon on November 1, 1930, and thereupon under a provision contained in each note authorizing it to do so without notice, the holder thereof declared the principal of all same to be due and payable; that each note bore eight per cent interest after maturity; that $640 was credited on each note on December 31, 1930, leaving a principal balance due on each note of $408.38.

It was further alleged that defendant, Reuben Josephson, the payee in said notes, was the president, manager, director and principal stockholder of the maker, Fredric Hotel Building Company, and controlled same; that for value, before maturity, he indorsed each of said notes and delivered same to plaintiff, who thereupon became a holder in due course of same. It is further alleged that Fredric Hotel Building Company was dissolved January 1, 1931; that defendant, Reuben Josephson, always had an intent that neither he nor the maker should pay said notes; that demand had been made and refused. Judgment was prayed on each count for $408.38 with interest at eight per cent from December 31, 1930, and costs.

There was attached to the petition a true and exact copy of each note, and the indorsement thereon, and the attached interest coupons, verified by affidavit of plaintiff's treasurer. Each indorsement, omitting portions of the printed form which had been "x'd" out by typewriter, reads as follows:

"For value received Reuben Josephson hereby assigns and transfers the within note and coupons with all his interest in and rights under the Mortgage or Deed of Trust securing the same to . . . . . . . . ."

(Signed REUBEN JOSEPHSON.

Originally the printed form of indorsement on the back of each note had contained the printed words "Home Trust Company" and "without recourse." These printed words were "x'd" out and there was typewritten in the body of the form in place of "Home Trust Company" the name "Reuben Josephson."

Defendant's answer admitted the execution of the notes set out in plaintiff's petition by Fredric Hotel Building Company, and that he was its principal director and stockholder and that he always intended not to pay said notes, and that plaintiff accepted said notes in full settlement of a previous indebtedness due from defendant to plaintiff. The answer set up the following affirmative defenses. (1) An agreement that defendant should not be liable to pay said notes, and that his "assignment" thereof was made for plaintiff's accommodation. (2) A denial that defendant "indorsed" said notes "for value and before maturity," and delivered them to plaintiff. (3) The "assignments" were "without recourse." (4) There was no default except one fraudulently created by plaintiff to bring about a foreclosure of a deed of trust securing the notes, and that at such foreclosure plaintiff had chilled the bidding by misrepresentations as to the value, amount, and legality of the notes, and that plaintiff had purchased the property foreclosed, and that the value of that property was in excess of the amount of the notes. The answer was not verified. There was no specific denial of the other allegations of the petition, but simply a general denial, following specific admissions and denials, of all other allegations of the petition. Plaintiff's reply denied all new matter contained in the answer.

The case went to trial November 2, 1933, before a jury, Nathan Rieger, vice president of plaintiff, testifying in its behalf. The bonds, interest coupons from November 1, 1930, on, and the signed indorsements on the back thereof were admitted in evidence. Defendant admitted his signature thereon to be genuine. No objection was offered to the admission of the notes and indorsements in evidence. A credit of $634.19 appears on the back of each exhibit as follows: "By credit on Principal and Interest under foreclosure December 31, 1930, $634.19. M. L. Friedman, Trustee." The witness testified that demand had been made on defendant for payment and refused. On cross-examination he testified that the notes were given to the bank in settlement of defendant's personal indebtedness of $11,200 and $5000. Originally there were $18,000 of these notes, and the bank paid Josephson the difference. The notes were secured by a deed of trust on a triplex in Kansas City which was foreclosed, and the property bid in by Home Trust Company at a figure in the neighborhood of $11,000. Defendant admitted that there was no irregularity in this foreclosure sale so far as its legality was concerned. The notes were acquired by plaintiff at the time of their

execution. On redirect examination Mr. Rieger testified that the condition of the notes, both face and indorsement, with the exception that a credit had been indorsed thereon, was just the same as when the notes first came into plaintiff's possession, and that there had never been any alteration.

Leonard Ulmann, defendant's attorney, was examined as a witness for plaintiff. He testified that defendant owned all the stock of Fredric Hotel Building Company, except qualifying shares. He testified no assets of said corporation had come into his hands as a trustee.

Defendant, Reuben Josephson, was examined as a witness for plaintiff. He testified that the Fredric Hotel Building Company was entirely inactive, and paid no fees. He was not cross-examined. He made no claim while a witness that the indorsements had been altered, or that he had any special agreements concerning same. He was not examined as to any of his alleged defenses at all.

With this evidence, plaintiff rested its case. Defendant thereupon rested without offering any evidence.

Thereupon, at plaintiff's request, the court gave the following peremptory instruction:

"Now, at the close of all of the testimony in the case the court instructs the jury that your verdict must be for the plaintiff on each count for $496.81."

The court refused to give Instructions 4 to 12 requested by defendant, setting out his theories of the case.

The jury returned a verdict on each count for $496.81 in accordance with the court's peremptory instruction. Judgment was entered thereon for a total sum of $7948.96, and costs.

In due time defendant filed a motion for new trial, assigning a number of grounds, which motion the trial court sustained, without specifying the ground on which it sustained same. From this order plaintiff duly prosecuted its appeal to this court.

I. Respondent has filed no statement or brief in this court. Since the trial court failed to specify the ground on which it sustained the motion for new trial we examine said motion to ascertain whether there is any reason assigned therein which will sustain the court's action. Many of the grounds assigned (some duplicating others) are obviously without merit, the record considered, and could not reasonably be supposed to have been the basis of the court's action. Those we shall not discuss. We shall, however, notice briefly three suggested by defendant's answer and his requested instructions before taking up the one upon which we believe the court's action must have been based.

Defendant pleaded that he "assigned" the notes without re-

course, and he requested instructions to the effect that if the words "without recourse" in the printed form of indorsement were stricken out without his consent after he had signed the indorsement the plaintiff could not recover. That the "assignment," as defendant terms it, in the form in which it now appears, amounted to an unqualified indorsement, see Maddox v. Duncan, 143 Mo. 613, 45 S. W. 688; Jacobs v. Gibson, 77 Mo. App. 244; Prichard v. Strike (Utah), 243 Pac. 114, 44 A. L. R. 1348. In the latter case the question is fully discussed and in the note thereto in 44 American Law Reports, page 1353 et seq., it is shown that such ruling is in accord with the weight of authority. As to alterations and erasures, the rule is thus stated in Paramore v. Lindsey, 63 Mo. 63, 66:

"The ancient rule of evidence was therefore to presume alterations and erasures of written instruments to have been made at the time of, or anterior to, their execution; and the weight of authority was decidedly in favor of the ancient rule. Where an alteration or erasure appears suspicious on its face, as if the ink differ, or the handwriting be that of the holder interested in the alteration, it must be explained. If nothing appears to the contrary the alteration will be presumed to be contemporaneous with the execution of the instrument."

Stillwell v. Patton, 108 Mo. 352, 360, 18 S. W. 1075, cites with approval the Paramore case. The rule is approved in Meffert v. Lawson, 233 S. W. 31, 38, 289 Mo. 337.

The notes and indorsements in the instant case were on printed forms obviously prepared originally for use by the plaintiff trust company in making loans, to be payable to and negotiated by it. They had to be changed to fit the parties to this transaction. That was done by "x-ing" out, on a typewriter, the printed words "Home Trust Company" where those words appeared in the printed form and substituting "Reuben Josephson." The words "without recourse" were similarly "x-ed" out. In all this there appears nothing suspicious. Defendant, through his counsel, admitted his signature to the indorsements, making no reservation or claim at the time that the indorsements as they then appeared were not in the form in which he had signed them. The notes and the indorsements were introduced in evidence without objection from defendant. He offered no evidence to prove, nor did he even intimate in the trial, that the words "without recourse" had not been stricken out when he signed. Absent any suspicious circumstances, as here, it was incumbent upon him to rebut the presumption that the erasure was made at or prior to the time of signing. He failed even to attempt to do so. Contra, his conduct at the trial amounts to an implied admission that the erasure was made before he signed. [See Fitz-

gerald v. Barker, 85 Mo. 13, 20.] There was no jury issue on this point. .

II. Relative to the contentions that there was an agreement (verbal) that defendant should not be required to pay the notes and that the plaintiff fraudulently brought about the default and the foreclosure of the security, etc., without considering the question of whether or not parole evidence could be heard to dispute or vary the terms and legal effect of the written indorsement, it is sufficient to say that those are clearly affirmative defenses and there was no evidence offered to support them. No jury question there.

III. Defendant asked and was refused an instruction directing a verdict for him unless the jury found that "plaintiff caused the bonds sued on to be presented and payment of the same to be demanded, and that, thereupon, a written notice of such presentment, demand and non-payment was delivered to the defendant," or left at his residence or place of business. Under the admitted facts of this case there was no error in the refusal of that instruction. Ordinarily presentment for payment and notice of dishonor of a negotiable instrument are necessary in order to bind an indorser. But there may be circumstances such as to render those steps unnecessary. As to presentment to the maker it is said that presentment and demand are not necessary where the note, at maturity, is held by a bank and by its terms is made payable there. [Havlin v. Continental Natl. Bank, 253 Mo. 292, 301, 161 S. W. 741, citing President and Directors of Bank of the United States v. Smith, 11 Wheat. 171, 6 L. Ed. 443, and Cent. Natl. Bank v. Stoddard, 83 Conn. 332.] In Bank of United States v. Smith, supra, the question is discussed at length and the reasons for the holding pointed out. The notes in question are by their terms payable "at the office of the Home Trust Company, Kansas City, Missouri," which trust company was indorsee and the holder at maturity. Defendant knew that, except for the credits resulting from sale of the security, the notes had not been paid. They could not have been paid except through and by him, because he was president and substantially sole stockholder of the corporation, maker of the notes. In fact, the testimony of Ulmann, defendant's attorney at the trial, indicates that very soon after the execution of the notes and before default in their payment, even the qualifying shares which theretofore had been held by Ulmann and another were surrendered to defendant and that, when the default occurred, he was the sole owner of the corporation. In effect he was the corporation. He alone could have paid on behalf of the corporation. It does not appear that there were then any other officers. [See on this point, O'Bannon Co. v. Curran, 113 N. Y.

Supp. 359.] Plaintiff's evidence shows, and it seems to have been tacitly conceded at the trial, that demand of payment was made of defendant. The statute, Section 2743, Revised Statutes 1929 (Mo. Stat. Ann., p. 700), dispenses with notice to the indorser "where the indorser is the person to whom the instrument is presented for payment." Defendant could not possibly have been prejudiced by plaintiff's failure to give him formal notice that the notes had not been paid. He had actual knowledge of that fact. The law did not require the useless formality of notifying him thereof. [See Electric & Mfg. Co. v. Hodge, 181 Mo. App. 232, 167 S. W. 1186, a case fairly analogous on this point; Hull v. Myers, 90 Ga. 674.] Moreover, defendant admitted in his answer that he never intended to pay the notes. Notice to him of their nonpayment would have been useless. "The law does not require the doing of a vain and useless act." [Electric & Mfg. Co. v. Hodge, 181 Mo. App. l. c. 235.] Under the conceded facts and circumstances of this case there was no issue for the jury on the question of demand and notice.

■ IV. This brings us to consideration of the assignment in the motion for new trial upon which we think the circuit court must have sustained said motion, since there is no other on which such action could properly have been predicated, viz., that the court erred in directing the jury as to the amount of their verdict and including therein the amount of interest without leaving it to the jury to ascertain and determine the amount of interest. If prior decisions of this court and the several Courts of Appeals are to be followed, the inclusion by the court in its instruction of the amount of the interest was erroneous. No doubt the court, in sustaining the motion for new trial, recognized and followed those decisions, as in duty bound. Appellant, conceding that the court's action was correct if said prior decisions are to be followed, earnestly contends that the question involved should be again considered. We think appellant is justified in that contention. We are indebted to industrious counsel for appellant for an able and comprehensive brief on the subject, which lightens our labor.

The amount which plaintiff is entitled to recover in this case, under the pleadings and the conceded facts, is merely a matter of arithmetical computation. The notes in question specify the amounts to be paid, the rate of interest and the time from which interest runs. The amount of the credits and the time when they were made are not disputed. There is no contention that, in the peremptory instruction given by the court, the interest was not correctly computed. The only defenses offered to plaintiff's right to recover failed, as matter of law. That the court, in an action on a written instrument for the payment of money, the execution of which is ad-

mitted and where the only defense fails as a matter of law, may properly direct a verdict for the plaintiff; is a proposition too well established on principle and authority to require argument or citation of authorities. But the question of whether or not, when there is no issue as to the *amount* of recovery, if the plaintiff is entitled to recover at all, the court may legally direct the jury as to the *amount* of its verdict has frequently troubled the courts of this State, particularly in regard to the computation of interest and its inclusion in the amount directed by the court to be found. As to the principal amount due by the terms of the instrument sued on, it seems now to be the established rule that the court may direct the jury as to the amount, as we shall point out. But not so as to the amount of interest, though the decisions have not been uniform.

The difficulty and confusion apparently have grown out of the construction of Section 973, Revised Statutes 1929 (Mo. Stat. Ann., p. 1246). Since we shall have to discuss and construe that statute it may be well to set out, along with it, other cognate sections. It appears, with six other sections, under the subtitle "Verdicts," in the Statutes of 1855, being Sections 20 to 26, inclusive, of Article X of Chapter 128, on "Practice in Civil Cases." Those sections appear unchanged in our present statute, and in the same order, except that Sections 25 and 26 of the 1855 Statute have been transposed, said Section 25 now appearing as Section 974, Revised Statutes 1929, and said Section 26 as Section 973, supra. They now appear as Sections 968 to 974, inclusive, Revised Statutes 1929 (Mo. Stat. Ann., p. 1244 et seq.), as follows:

"Sec. 968—The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury finds the facts only, leaving the judgment to the court."

"Sec. 969—In every issue for the recovery of money only, or specific real or personal property, the jury shall render a general verdict."

"Sec. 970—In all other cases, if at any time during the progress of any cause, it shall, in the opinion of the court, become necessary to determine any fact in controversy by the verdict of a jury, the court may direct an issue or issues to be made."

"Sec. 971—No issue shall be made, except such as shall be directed by the court."

"Sec. 972—The trial of such issues shall be by jury, and the issues shall be disposed of by a general or special verdict before a final judgment shall be made therein."

"Sec. 973—When a verdict shall be found for the plaintiff in an action for the recovery of money only, the jury shall also assess the

amount of the recovery; so, also, if they find for the defendant in case of offsets or other demand for money."

"Sec. 974—The court may award a new trial of any issue, upon good cause shown; but not more than one new trial of the same issue shall be granted to any one party."

In Cates, Admr., v. Nickell, 42 Mo. 169, decided in 1868, the suit was on a promissory note. The jury returned a general verdict for the plaintiff, not naming any amount. The court computed the amount of principal and interest due by the terms of the note and rendered judgment for such amount. This court held that action to be reversible error under the statute, now Section 973, supra, holding that under said statute the duty to find and assess the amount of recovery was absolutely imposed upon the jury and, in effect, that the court's action amounted to an unauthorized invasion of the province of the jury.

A few years later, in Wells v. Zallee, 59 Mo. 509 (March Term, 1875), in a suit on a note, the trial court gave a peremptory instruction to find for the plaintiff in a stated sum, which included the interest, computed by the court. It was argued on appeal that it was the province of the jury to calculate the amount of the verdict. This court affirmed the judgment, saying there were two reasons against reversal, first, that no exceptions had been taken to the giving of the instruction, and, second, "this court is not in the habit of reversing unless some error was committed materially affecting the right of the party." The Cates case is not mentioned. Wells v. Zallee, was followed in Doud v. Reid, 53 Mo. App. 553 (1893), without noticing the Cates case. But in Burghart v. Brown, 60 Mo. 24 (May Term, 1875), this court followed Cates, Admr., v. Nickell, without discussion and without noticing Wells v. Zallee. In the Burghart case, as in the Cates case, the verdict was general, naming no amount, which fact the court may have considered made a distinction between those cases and Wells v. Zallee. Thereafter, until 1908, the appellate courts, in numerous decisions, followed, for the most part at least, the rule supposed to have been announced in the Cates and Burghart cases, holding it to be reversible error for the court to direct the *amount* of the verdict, even where the amount was not in controversy.

In 1908, in the case of Beekman Lumber Co. v. Acme Harvester Co., 215 Mo. 221, 252, 114 S. W. 1087, this court, *en banc*, held that it was not reversible error for the court to calculate the interest and include it in the amount for which a verdict was directed for the plaintiff. The facts justified a directed verdict for the plaintiff, there was no jury issue as to the principal amount due and the court held that interest was recoverable as a matter of law, from the commencement of the suit. The court did not notice prior decisions

holding it to be reversible error for the trial court to direct the amount of the verdict. It based its ruling on Section 865, Revised Statutes 1899, now Section 1062, Revised Statutes 1929 (Mo. Stat. Ann., p. 1352), forbidding the reversal of judgments except for error "materially affecting the merits of the action." The court said, 215 Mo. l. c. 252, 114 S. W. 1087: "To reverse and remand this judgment for another trial simply to have a jury calculate the interest again on the amount acknowledged by the defendant in writing to be due plaintiff would be a clear violation of the statute."

The Beekman case was followed in several subsequent decisions by the Courts of Appeals. But in 1910, Division Two of this court, in Johnson v. Grayson, 230 Mo. 380, 407, 130 S. W. 673, without noticing the Beekman case, reverted to the old rule. The court in that case, impliedly at least, holds that the trial court may, where the facts authorize a directed verdict for the plaintiff, direct the amount of principal to be found, but holds that the jury must calculate the interest.

In Boutross v. Miller (1920), 223 S. W. 889, Division Two of this court again had the question before it. The decision seems to concede that the trial court may properly direct as to the principal amount but holds that it must be left to the jury to compute the interest. The Beekman case is referred to and in effect overruled. The court says that the conclusion reached in the Beekman case is more in accord with reason, but follows the older cases, apparently because the rule therein declared had been so long established. The Boutross case does not appear to have reached the court en banc. Other decisions might be cited holding, or in effect conceding, that the court may, in a proper case, direct the amount of principal to be found but may not calculate the interest and include it in the amount directed to be found.

In Mercantile Trust Co. v. Dulle, 282 S. W. 414, the question again came before this court en banc. The action was upon a written instrument which fixed the amount due and the rate of interest. The defense tendered conclusively failed. The trial court directed a verdict for the plaintiff for the principal amount with interest at the stated rate, stating also the amount of interest (which the court had calculated) and the total amount for which the verdict should be returned. The jury returned a verdict for such total amount. This court held that the action of the trial court in computing the interest and including it in the amount directed to be found was erroneous, but permitted the plaintiff to retain his judgment for the principal amount by remitting the interest, thus clearly holding that the instruction was right so far as it directed a verdict for the principal amount. But the court expressed its dissatisfaction with the rule which it followed. It said, 282 S. W. l. c. 416:

"The soundness of this rule has sometimes been questioned, but has been quite consistently followed. It seems to the writer of this opinion that there is no reason for the application of Section 1423 to actions upon notes and bonds where there is no question concerning the amount due and where the amount of interest is merely a matter of calculation. On its face the language of the statute includes all actions for money only. There appears to be a sound basis for the contention that the statute was only intended to apply to actions for money only where the amount of recovery is not susceptible of mathematical determination. We will not undertake to go into that matter here. The rule has been well established so far as adjudicated cases can establish a rule. Upon the authority of said cases, this instruction must be held erroneous."

Section 1423 referred to in the above quotation is Section 1423, Revised Statutes 1919, now Section 973, Revised Statutes 1929. The Beekman case is not mentioned in Mercantile Trust Co. v. Dulle.

Since the decision in Mercantile Trust Co. v. Dulle, supra, the Courts of Appeals have followed that decision, as they are in duty bound to do. The rule there declared may be said to be now the settled rule in Missouri, so far as a rule of practice can be "settled" by court decisions. But is the rule as to interest sound and should it continue to be followed? We think not.

It seems rather strange that the principle applied in Beekman Lumber Co. v. Acme Harvester Co., supra, has been so completely ignored. The statute there referred to, forbidding the reversal of judgments except for error materially affecting the merits of the action, is a sensible and wholesome provision. It has been applied many times. It should be considered along with other statutory provisions relating to practice and procedure. In a case where the *amount* to be recovered, if the plaintiff is entitled to recover at all, is not in dispute, and depends, as to interest, merely upon mathematical computation based upon a rate of interest and a period of time fixed by the contract sued on and about which there is no controversy, and the computation of interest is admittedly correct, it is difficult to see how the rights of the parties are prejudiced or the "merits of the action affected" by having the court, rather than the jury, perform the mathematical process of computing the interest. It has been held competent, even under our present rule, for the court to instruct the jury to find for a stated amount (the principal), and for interest at a stated rate from a stated date. Lawrence Lumber Co. v. Rieth (Mo. App.), 258 S. W. 31; Farmers' Bank v. Stamper (Mo. App.), 250 S. W. 959, 961, citing Wright Inv. Co. v. Friscoe Realty Co., 178 Mo. 72, 77, 77 S. W. 296, wherein an instruction to that effect was given and judgment for the plaintiff was affirmed. Cannot the court figure the interest as well as the

jury? And if the jury calculates it erroneously, may not the court require correction of the error? And can either party be prejudiced by the fact that the court, rather than the jury, figures the interest, if it be calculated correctly? The questions answer themselves.

But, for another reason, we think the rule under discussion is unsound. We have set out the section of the statute, Section 973, supra, the construction of which has led to the adoption of the rule in question, and, with it, other sections of the statute enacted at the same time and relating to the same subject. The other sections quoted refer to *issues* to be determined by the jury. For example, Section 971 provides that "no issue shall be made, except such as shall be directed by the court." Section 972, that "The trial of such issues shall be by jury," etc. Considering these statutory provisions together, as they should be, we think that Section 973, in providing that "when a verdict shall be found for the plaintiff in an action for the recovery of money only, the jury shall also assess the amount of the recovery," the statute means and was intended to apply only where there is *an issue* as to the amount. In these quoted statutory provisions, including said Section 973, the Legislature was dealing with the matter of the trial and determination of issues of fact in actions at law.

It has been said, and we think correctly, that, "A verdict is the decision of a petit jury upon an *issue of fact* submitted to them." [Jones v. King, 30 Minn. 368, 370, 15 N. W. 670. And see Sec. 968, R. S. 1929, supra.] If there is no *issue of fact* as to the amount there is nothing, in that regard, for the jury to decide. Interest called for in a note is part of the contract. If the rate of interest and the date from which interest runs are specified in the contract, the *amount* of interest is merely a matter of mathematical calculation, which, properly made, can result in but one sum. The amount of interest, therefore, is determined by the contract. It is not left to the discretion of the jury any more than is the amount of the principal of the note. The jury cannot, in such case, properly render a verdict for an amount other than the amount of the principal and interest.

The statute in question, Section 973, supra, makes no distinction between principal and interest. Construed literally, it would forbid the court to direct the amount of principal to be found as well as the amount of interest. But our courts have, notwithstanding that statute, announced the rule that the trial court may, in a proper case, direct the amount of principal to be found but not the amount of interest. There is no logical reason for the distinction. If the statute forbids one it forbids both. We think it forbids neither, where the amount is not in controversy. The authority of courts of general jurisdiction, exercising common law powers, to direct verdicts

when the facts are admitted, in other words, when there is no issue of fact for the jury to decide, is generally recognized. It is part of the inherent power of the court, which is charged with the duty of determining questions of the law. This the Legislature must be presumed to have known and to have had in mind in enacting the statutes above quoted.

In Beckley v. Hickerson, 315 Mo. 400, 286 S. W. 74, the plaintiff sued to recover money which he had paid the defendant on the purchase price of an automobile. There was dispute as to the plaintiff's right to recover, but the defendant, on the witness stand, admitted receipt of the sums claimed to have been paid by the plaintiff. The court instructed the jury that, if they found for the plaintiff, their verdict should be for a stated amount. On appeal it was contended that said instruction violated the statute, now Section 973, supra. This court rejected that contention, saying, 315 Mo. l. c. 405, 286 S. W. l. c. 75:

"But defendant on the witness stand fully corroborated the testimony of plaintiff as to the amount that had been paid him by plaintiff under the contract of sale. The question of the amount so paid then and there ceased to be an issue: It stood admitted. Neither Section 1423 nor any other rule of law pertaining to jury trials in civil actions, so far as we are advised, requires the finding by a jury of a fact which the parties themselves agree upon."

The court further said that, the parties having agreed as to the amount that had been paid under the contract of sale, "plaintiff was entitled as a matter of law to recover that amount, if entitled to recover at all," and that the giving of the instruction was, therefore, not error. [Sec. 1423, referred to in the quotation, is present Sec. 973.]

In 64 Corpus Juris, section 875, page 1069, it is said: "Where the amount due is not in issue, a verdict generally in favor of either party is sufficient, without assessing damages, even under a statute requiring the jury to assess the amount of recovery, such a provision not applying where the amount is not in issue."

In 27 Ruling Case Law, section 32, page 860, we read: "Where the amount of the recovery depends on the construction of the pleadings and contract, which are questions of law, . . . a finding simply for the plaintiff is sufficient." And see, also, 27 Ruling Case Law, section 63, page 888, to the effect that where the amount of interest is only a matter of mathematical calculation the court may make the computation.

The text above quoted from Corpus Juris is supported by the following decisions in jurisdictions having statutes similar to our Section 973: Jones v. King, 30 Minn. 368, 15 N. W. 670, supra; English v. Goodman, 3 N. D. 129, 54 N. W. 540; Knight v. Fisher,

15 Colo. 176, 25 Pac. 78.; Logan Co. Natl. Bank v. Townsend (Ky. Ct. of App.), 3 S. W. 122; Cooper v. Poston, 62 Ky. 92; Dine v. Donnelly, 134 Ky. 776, 121 S. W. 685; Sandell v. Norment, 19 N. M. 549, 145 Pac. 259; Buzanes v. Frost, 19 Colo. App. 388, 75 Pac. 594; Josephi v. Mady Clothing Co., 13 Mont. 195, 33 Pac. 1; Hutchinson v. Superior Court, 61 Cal. 119, holding the general verdict sufficient on the principle that that is certain which can be made certain.

The above cited cases from other jurisdictions are in point in principle. If, where the amount of recovery is not in controversy and is determinable from the pleadings or the contract by mere mathematical calculation, the court may properly accept a general verdict and render judgment thereon for the correct amount, it certainly cannot be error for the court to direct the jury to return a verdict for such amount.

We hold that where, as in the instant case, the plaintiff is entitled to a directed verdict and there is *no controversy* as to the amount, and the contract sued on calls for interest at a stated rate for a certain time, so that the ascertainment of the amount of interest is only a matter of mathematical computation, it is not error for the court to make the calculation and direct a verdict for the total amount due, including the interest. We are convinced that the contrary rule so long followed in this State originated in a misconception of the purpose and meaning of the statute. It has been criticized and its wisdom questioned by this court, as we have shown, and also by the Courts of Appeals. It has been a prolific source of confusion and of trouble to the courts. It appears to us illogical and to have nothing but its age to recommend it. The latter consideration might well deter us from overturning it if property rights had become vested by reliance upon it and would be disturbed by its revocation. But we cannot perceive how its revocation can prejudice any vested right or interest. The decisions of this court and the Courts of Appeals announcing or applying said rule should be deemed overruled and should no longer be followed.

It results that the order of the circuit court sustaining defendant's motion for new trial in the instant case was erroneous. It is accordingly reversed and the cause is remanded to that court, with directions to set aside said order, overrule said motion, reinstate the verdict and enter judgment in accordance therewith.

PER CURIAM:—The foregoing opinion by Cooley, C., in Division Two is adopted as the opinion of the Court en Banc. All concur.