**CUSTOM CRAFT TILE, INC.,**
**Plaintiff-Respondent,**

v.

**BRIDGECREST, INC., et al.,**
**Defendants-Appellants.**

**No. 48533.**

Missouri Court of Appeals,
Eastern District.

March 5, 1985.

Alan Agathen, Clayton, for defendants-appellants.

Paul A. Hennerich, Chesterfield, for plaintiff-respondent.

KAROHL, Judge.

This is a suit on a promissory note brought by plaintiff payee and holder, against defendant Bridgecrest, Inc. as maker, defendant-appellant Fred A. Chapman as endorser and defendant R. William Burmeister as endorser. Plaintiff sued for payment of $18,681.95 plus accrued interest allegedly due on a promissory note. This is a second appeal involving the same parties. *See Custom Craft Tile, Inc. v. Bridgecrest, Inc.*, 662 S.W.2d 320 (Mo.App. 1983). [*Custom Craft I*]. Only defendant-appellant Fred A. Chapman and plaintiff Custom Craft Tile, Inc. remain in the case.[1]

This appeal following a trial, raises the same issue as we considered in *Custom Craft I* which was appealed after summary judgment for plaintiff. We held in *Custom Craft I*, that there was a disputed material question of fact of timely notice of dishonor to Chapman and therefore summary judgment was improper. Both appeals involve the liability of defendant in his capacity as an endorser. In *Custom Craft I* we

recognized that § 400.3-508(2) RSMo 1978 requires that notice of dishonor be given before midnight of the third business day after dishonor by the maker and that § 400.3-502(1)(a) RSMo.1978, provides that if notice is not timely the endorser is discharged unless notice is excused. Plaintiff, Custom Craft, argued that notice of dishonor was not required because of the bankruptcy of Bridgecrest Inc. as the maker of the note and, in the alternative, no notice of dishonor was required under *Home Trust Co. v. Josephson*, 339 Mo. 170, 95 S.W.2d 1148, 1151-1152 (banc 1936), because of Chapman's status as president of Bridgecrest. Plaintiff argued that endorser Chapman was "Bridgecrest" hence its dishonor was automatically notice to him. Plaintiff did not prevail on the bankruptcy issue because it occurred after October 6, 1977, the date of presentment, and was therefore irrelevant. The alternative argument failed because the summary judgment record failed to support a finding based upon undisputed facts that on the date of presentment defendant Chapman was the president of Bridgecrest. In fact, Chapman's answers to interrogatories denied he was president of Bridgecrest at the time of presentment. In sum, for purposes of summary judgment there remained a material issue of fact in dispute which excluded the application of the *Josephson* exception to the requirement of notice.

On remand this case was tried to a court with the jury waived. The decisive issue on this appeal is whether there was substantial evidence presented during the trial to support a finding that plaintiff Custom Craft presented the note to Bridgecrest, Inc.; that Bridgecrest, Inc. dishonored the note; and, that either Chapman received timely notice of dishonor as endorser or notice was excused under the *Josephson* exception because of his proven "identity for this purpose" with Bridgecrest, Inc. The supreme court said in *Josephson*, 95 S.W.2d at 1151-1152:

---

1. Plaintiff dismissed its cause of action against co-defendant, Bridgecrest, Inc. on February 21, 1984.

Ordinarily presentment for payment and notice of dishonor of a negotiable instrument are necessary in order to bind an indorser. But there may be circumstances such as to render those steps unnecessary. As to presentment to the maker it is said that presentment and demand are not necessary where the note, at maturity, is held by a bank and by its terms is made payable there. (citations omitted) ... The notes in question are by their terms payable "at the office of the Home Trust Company, Kansas City, Missouri," which trust company was indorsee and the holder at maturity. Defendant knew that, except for the credits resulting from sale of the security, the notes had not been paid. They could not have been paid except through and by him, *because he was president and substantially sole shareholder of the corporation,* maker of the notes.... *In effect he was the corporation. He alone could have paid on behalf of the corporation. It does not appear that there were then any other officers....* Plaintiff's evidence shows, and it seems to have been tacitly conceded at the trial, that demand of payment was made of defendant. The statute, section 2743, R.S.1929 (Mo.St. Ann. § 2743, p. 700), dispenses with notice to the indorser "where the indorser is the person to whom the instrument is presented for payment." *Defendant could not possibly have been prejudiced by plaintiff's failure to give him formal notice that the notes had not been paid.* He had actual knowledge of that fact. The law did not require the useless formality of notifying him thereof. (citations omitted) Moreover, defendant admitted in his answer that he never intended to pay the notes. Notice to him of their nonpayment would have been useless. "The law does not require the doing of a vain and useless act." (citations omitted) Under the conceded facts and circumstances of this case there was no issue for the jury on the question of demand and notice. (emphasis ours).

"In a court tried case judgment is presumed to be correct. The judgment will be affirmed unless there was no substantial evidence to support it, unless it is against the weight of the evidence or erroneously declares the law or erroneously applies the law." *St. Louis County, Mo. v. Oakville Development Company, Inc.,* 676 S.W.2d 919, 921 (Mo.App.1984).

The only testimony relevant to the issue was that of Leo A. Beckmann, president of plaintiff-respondent Custom Craft. He gave the following testimony:

[Direct Examination]

Q  So on October the 6th, 1977, the note was due and payable?

A  That's right.

Q  And you made demand upon Mr. Chapman at the corporate headquarters at Bridgecrest, Inc., for payment of this note?

A  That's right.

Q  Did you make demand upon Mr. Chapman as an individual endorser of this note for payment at that time also?

A  Well, he is—Mr. Chapman is both parties, both the note personally and Bridgecrest.

....

[Cross-examination by *pro se* defendant]

Q  You indicated that on October 6th you made the demand on me as an individual and endorser of the note that is Exhibit 1, and also it's the property of Bridgecrest, Inc.?

A  That's correct.

Q  And this demand was made in the offices, corporate offices of Bridgecrest, Inc., on Fee Fee Road?

A  That's correct.

....

Q  There was no written demand made, it was verbal?

A  That's correct.

Q  Do you know whether or not I was the president of Bridgecrest, Inc., at that time?

A  Yes.

Q  I was?

A  Yes.

Q  And how do you know that?

A  Well, you were the only one I ever had contact with there.

Q  You never contacted Dr. Burmeister?

A  The only meeting with Mr. Burmeister, or Dr. Burmeister, was at Chicago Title at the time the note was executed.

Q  And when was that?

A  October of '76.

. . . .

Q  (By Mr. Chapman) Are you aware that in March 1977 that this Court removed me from control of Bridgecrest, Inc.?

A  No, I was not.

Q  Are you aware that in May of 1978 that this Court issued an injunction against Burmeister, disposing of any interests in Bridgecrest, Inc.?

A  I was advised of that, after the fact.

. . . .

Q  Are you absolutely certain that on October 6th, 1977, that you did visit the Bridgecrest, Inc., corporate offices, Suite 201, 3159 Fee Fee Road, and made the demand on me?

A  To the best of my knowledge, yes. You are asking for an eight-year period of time, but I recall making the demand on you.

. . . .

Defendant-appellant, Chapman, testified that he moved from Bridgecrest, Inc. the first week in September 1977 [before presentment] and that he was not in control of Bridgecrest, Inc. thereafter.

■ In order to prevail at trial it was encumbent upon the plaintiff to prove presentment of the note to the maker, Bridgecrest, Inc. § 400.3–503(1)(a) RSMo 1978. The testimony of Beckmann which the trial court was entitled to believe, was that he made demand upon defendant Fred A. Chapman on October 7, 1977 at the offices of Bridgecrest, Inc. If the demand was upon Bridgecrest, Inc. through Chapman as president, the next requirement upon the plaintiff was to prove dishonor by Brid-

gecrest, Inc. We find no evidence that Bridgecrest, Inc. refused payment.

Finally in order to prevail against defendant Fred A. Chapman as endorser it fell to plaintiff to prove facts to support application of the *Josephson* exception or that notice of dishonor by the maker was given by midnight of the third day after dishonor. § 400.3–508(2) RSMo 1978. Without Bridgecrest, Inc.'s dishonor there could be and there was no evidence of notice of dishonor to Chapman. At best the evidence as reproduced here was that on the due date, October 6, 1977, plaintiff through its president made a demand upon Mr. Chapman as an individual endorser, "... both to the note personally and Bridgecrest." There is no evidence as to Mr. Chapman's response to plaintiff's demand either in his individual capacity as endorser or in the capacity as an officer of Bridgecrest, Inc. if he was still an officer.[2] Finally the only evidence that defendant Chapman was president of Bridgecrest at the time the note was presented for payment was Mr. Beckmann's testimony that Chapman was the president because, "... [Y]ou [Chapman] were the only one I ever had contact with there."

■ In order to invoke the *Josephson* exception plaintiff had to prove endorser Chapman had the same identity as Bridgecrest, Inc. on the date of presentment, October 6, 1977. On direct examination Beckmann described Chapman as "both parties." On cross-examination the basis of that testimony was undermined by Beckmann's further testimony that he surmised that critical fact on his sole contact theory. Consequently, the original answer is of no probative value. *See Keller v. Anderson Motor Service, Inc.*, 652 S.W.2d 735, 737 (Mo.App.1983). The original answer was nothing but a guess, speculation or conclusion. "Ordinarily one's understanding about a matter is not competent evidence, and what a witness 'thought' or 'didn't think' does not usually constitute substantial evidence justifying or permitting a find-

2. The note was signed on October 6, 1976 "Brid-  gecrest, Inc., By F.A. Chapman President".

ing to that effect (citations omitted)." *Nutz v. Shepherd*, 490 S.W.2d 366, 371 (Mo.App.1973). In *Nutz* other evidence proved the proposition in question and the judgment for plaintiff was affirmed. In the present case there was no other evidence of Chapman's relationship with Bridgecrest, Inc. on the critical date. Applying the evidentiary rule noted in *Nutz* presentment was never proved.

*Josephson* is not availing for the further reason that there was no evidence that Chapman was the only officer or director, if he was the president, who could have spoken or acted for Bridgecrest, Inc. *Josephson*, 95 S.W.2d at 1152. Finally there is no evidence that Chapman, if the president of Bridgecrest, Inc. on October 6, 1977, or any other corporate voice of Bridgecrest, Inc. refused payment and dishonored the note, and if so, when the dishonor occurred. We may surmise that the note was not paid but we can not surmise when the dishonor occurred. The notice statute renders the date critical. For these reasons the *Josephson* exception may not be applied to the present case.

We conclude that the deficiency of evidence on the issue of presentment, dishonor and notice on the first appeal from a summary judgment was not overcome by the testimonial evidence at trial. Absent proof of dishonor and notice of dishonor defendant-appellant stands discharged of liability on the endorsement. § 400.3-502(1)(a) RSMo 1978.

As the judgment misapplies the law and there is a failure of proof it must be reversed. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

PUDLOWSKI, P.J., and GAERTNER, J., concur.